## Municipal Control Over Hunting

PACKEL, Attorney General, March 25, 1974.—We have received an inquiry from your staff concerning the right of municipalities to restrict hunting in areas where the Game Commission permits hunters to engage in their sport. In some cases, there is a conflict between Game Commission regulations and local municipal ordinances and citizens have requested advice about their right to hunt in areas where the commission explicitly permits but where local governments either directly or indirectly inhibit the right to hunt. It is our opinion, and you are hereby advised, that regulations regarding areas for hunting and weapons to be used in hunting are exclusively within the province of the commission, and to the extent that local ordinances invade this province, then to that extent such ordinances are invalid.

Our information indicates that municipal corporations are passing two types of gun control legislation: (1) ordinances which explicitly preclude the usage of guns for hunting in their municipalities; and (2) ordinances which absolutely prohibit the discharge

of weapons within the municipality without specifically mentioning that the effect of the ordinance is to curtail lawful hunting within such municipalities. The question is whether or not such ordinances conflict with the Game Law of June 3, 1937, P. L. 1225, as amended, 34 PS §1311.703(f)), which authorizes the Game Commission to prescribe use of particular types of weapons in certain designated areas for hunting where such usage would not be inconsistent with public safety.

The Game Commission is authorized to "manage" game, animals, and birds of the Commonwealth, 34 PS §1311.210, and is also entitled to establish hunting seasons in the Commonwealth: 34 PS §1311.501 and §1311.601. Furthermore, the commission is expressly empowered to pass resolutions restricting the usage of weapons and ammunition used in hunting within designated areas of the Commonwealth for the purpose of promoting public safety:

"It is lawful to hunt . . . game of any kind only through the use of a gun, pistol, revolver, or bow and arrow . . . except:

"  . . .

"(f) That the commission may, by resolution, prescribe the type of firearms or bow and arrow and the type of ammunition to be used in any designated area of the Commonwealth in the interest of public safety . . .": 34 PS §1311.703.

Under this statutory scheme, hunting is elevated to a statutory right subject to regulation by the Game Commission. The question which must be decided is whether or not municipal corporations can, either directly or indirectly, infringe upon this statutory right by passage of ordinances which specifically prohibit hunting or which absolutely restrict the usage of a gun even for hunting.

Municipal corporations are merely creatures of the State and do not enjoy the incidents of sovereignty: White Oak Borough Authority Appeal, 372 Pa. 424 (1953). Consequently, it is self-evident that a municipal ordinance cannot be sustained to the extent that it is contradicted by or inconsistent with a State statute: Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374, 380, 381 (1951). Furthermore, as noted in Commonwealth v. Ashenfeld, 413 Pa. 517 (1964), a municipal ordinance which provided that hunters must register with the municipality a statement by the landowner where the hunter hunts that such landowner permits such hunting was an invalid invasion of the State's regulatory control of hunting:

"An examination of [the Second Class Township Code] indicates that its language is most inappropriate to evidence any intent on the part of the Legislature to delegate to second class townships vast and extensive police powers; certainly no intent is manifest or evident to grant powers to second class townships to act in areas where the Commonwealth itself, through legislative enactments [i.e., the Game Law], has provided regulation": 413 Pa. at 522.

In the matter before us, the legislature has provided that the Game Commission is authorized to determine what types of lawful hunting activities can be carried out in the State and what restrictions shall be placed on hunters in terms of the type of firearms and ammunition that can be used in designated areas of the State for purposes of promoting the public safety. Inasmuch as State legislation has pre-empted the field in terms of providing regulations by the Game Commission to promote public safety, any attempt by the local municipalities to control or limit hunting within their boundaries, either directly through prohibiting hunting or indirectly through restricting the discharge

of firearms within the municipality, must be stricken down as in contravention of the State's regulatory control of hunting through the Game Law: 34 PS §1311.101. It is noted, however, that local ordinances which prescribe the discharging of firearms within the municipal boundaries can still be valid so long as they are construed as prohibiting the discharge of firearms within the municipality *except* where the firearm is lawfully used in hunting as provided for by the Game Law and by the rules and regulations of the Game Commission. If construed in this manner, such local ordinances would not conflict with the Game Law and would not, therefore, be invalid.

With reference to the authority of particular local municipalities to enact such ordinances directly or indirectly regulating hunting, an examination of the Municipal Code indicates that the broad grant of power to pass ordinances to promote the general welfare of its citizens would be sufficient authority for such local ordinances absent State preemption. Furthermore, there is specific statutory authority granting to cities the authority to regulate the "unnecessary firing and discharge of firearms":

"The cities of this Commonwealth be, and they are hereby, authorized to regulate or to prohibit and prevent the sale and use of fireworks, firecrackers, sparklers, and other pyrotechnics in such cities, and the *unnecessary firing* and *discharge* of firearms in or into the highways and other public places thereof, and to pass all necessary ordinances regulating or forbidding the same and prescribing penalties for their violation": 53 PS §3703.

There are two other firearm regulations which appear within the statutes concerning cities of the second and third class which regulate, prohibit and prevent the discharge of firearms within the city: 53 PS §§23131, 37403(26). It appears clear from these stat-

utes that most cities are given the right to control to a certain extent the discharge of weapons subject to prevailing State law.

With reference to the powers of townships, their police powers include the right to define and prohibit disorderly conduct, 53 PS §56509, and the power to take all needful means for securing the safety of persons or property within the township: 53 PS §56510. It appears that under 53 PS §56510 townships have the right to protect the public safety which includes the right to proscribe discharge of firearms subject, again, to prevailing State law.

With reference to municipalities incorporated under the Home Rule Charter and Optional Plans Act, 53 PS §1-101, et seq., it is noted that such municipalities are explicitly restricted by the legislature from enacting certain types of gun-control legislation:

"No municipality shall enact any ordinance or take any other action dealing with the regulation of the transfer, ownership, transportation or possession of firearms": 53 PS §1-302(e).

In such instances, both the affirmative grant of power by the legislature to the Game Commission to designate areas for hunting and the types of weapons used therein, and the explicit restriction on the municipality from passing ordinances dealing with the " . . . transfer, ownership, transportation or possession of firearms . . . " indicate that such home rule municipalities are not authorized to restrict hunting or the transfer, ownership, transportation or possession of firearms.

Within this context of the restrictions by State statute on municipal corporations interfering with State regulation of hunting, it is expressly noted that municipal corporations possess the same statutory right to restrict hunting on municipally-owned land just as any other property owner wh're the provision of the

238

Game Law, 34 PS §1311.820, on posting are followed. Consequently, municipal corporations can post municipally-owned parks, land and institutional grounds and thereby prohibit hunting in such areas irrespective of the general authority of the Game Commission to control hunting in all areas of the Commonwealth.

In summation, it is our opinion and you are hereby advised that municipalities generally have the right to pass ordinances dealing with ownership and possession of guns *except* that municipalities incorporated under the Home Rule Charter and Optional Plans Law, 53 PS §1-101, et seq., can in no way restrict the transfer, ownership, transportation or possession of firearms. Even though municipal corporations possess such power, it does not include the authority to invade the province of the Game Commission, either directly or indirectly, in delineating areas for hunting and prescribing the types of weapons which can be used therein for hunting. Where municipal corporations are landowners, however, they possess the same statutory right as all other landowners to post their land and thereby inhibit hunting pursuant to 34 PS §1311.820 in municipal parks, institutional grounds, and such other municipally-owned lands.