Virginia WOLFE, Gloria and Ed Perlis, Aline Shipreck, Vicki and Doug Hensinger, Terri and Robert Syvret, Lori and Richard Kline, Diane and Barry Diamond, Bonnie Zitrides, Keith and Debbie Snyder, Joe and Lisa Long, Donna and Richard Hensinger, Berniece and Richard Ascani, Kathy and Richard J. Ascani, Carolyn A. Geiger, Mary Cialkowski, Kelley Fritzinger, Julie Bolton, Bethany and Matthew Pope, Edward and Brenda Hanna, Beverly Kung, Margaret Meikrantz,

---

Kristal Seagreaves, Brenda Rosen, Kimberly Hlubik, Margaret Scheifile, Julianne Labbiento, Katherine Poniktera, Ann Baker, Kathleen A. Cochrane, Lisa H. Seibert, Vivian C. Foulke, David Fritzinger, III, Colleen Kern, Andrew and Donita Marze and Megan M. McCarthy, Appellants,

v.

TOWNSHIP OF SALISBURY.

Commonwealth Court of Pennsylvania.

Argued June 10, 2005.

Decided Aug. 3, 2005.

Melissa P. Rudas, Bethlehem, for appellants.

John W. Ashley, Allentown, for appellee.

BEFORE: FRIEDMAN, J., COHN JUBELIRER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Virginia Wolfe, et al. (Residents) appeal from an order of the Court of Com-

mon Pleas of Lehigh County (trial court), that denied their petition to permanently enjoin the Township of Salisbury (Township) from implementing Ordinance 04–2004–514 (Ordinance), which amended Chapter 16 of the Township's Code of Ordinances, USE OF PUBLIC PARKS AND PLAYGROUNDS.

The Township is a township of the first class and joint-owner of Franko Park and Riverside Park Recreation Areas, which are located within the Township.[1] Residents are owners of property within the Township and "recreate in the park areas that are at the heart of this action." (Residents' Mem. in Support of a Prelim. Inj.)

On June 12, 2003, the Township adopted Resolution 08–2003–1123,[2] which provided

"that a junior hunting program shall be conducted on this tract of land [Riverside Park] which will comply with any and all applicable hunting regulations and laws." The Township's Board of Commissioners ultimately enacted the Ordinance,[3] which consists of Part 3, TYPES OF HUNTING PERMITTED IN CERTAIN TOWNSHIP PARKS. The trial court summarized the relevant sections contained in Part 3 as follows:

Section 301 [4] permits hunting either by bow and arrow or by participants in the Junior Hunting Program in the Township's Franko Park and Riverside Park Recreation Areas during hunting seasons approved by the Pennsylvania Game Commission [ (Commission) ]. Section 302 [5] establishes a Junior Hunt-

---

1. The other owners are the City of Allentown and the County of Lehigh. (Notes of Testimony (N.T.), October 11, 2004, at 40.) The Township stated at oral argument that it had obtained the consent of the City and County to implement the Ordinance.

2. The record is unclear whether the Resolution is "06–2003–1123" or "08–2003–1123."

3. We note that Ordinance 04–2004–514 is the reenacted version of Ordinance No. 10–2003, Exhibit "A", (R.R. 13A), which had been enacted by the Township on October 23, 2003, but later invalidated on the grounds that its enactment violated the "notice and publication" requirement in Section 1502(I)(a) of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 56502(I)(a). Initially, the trial court had issued a preliminary injunction primarily on this ground, while also noting that Residents were likely to succeed on their claim that the Township had unlawfully invaded the province of the Pennsylvania Game Commission. (Trial Ct. Op., March 30, 2004, at 7 n. 3).

  After this, in order to cure the notice and publication defect, the Township enacted Ordinance 04–2004–514 and, at the hearing on October 11, 2004, the parties agreed that the only issue remaining for adjudication was whether the Township had encroached on the Commission's exclusive authority to regulate hunting.

4. Section 301, in its entirety, reads:

   *Hunting Permitted:* Hunting shall be permitted in Franko Park Recreation Area and Riverside Park Recreation Area during the approved hunting seasons as established by the Pennsylvania Game Commission and under the following conditions.
   A. Only "Archery" (use of bow and arrows) hunting shall be permitted *unless* hunters are participating in the "Junior Hunting Program[."]
   B. Hunters shall have and display the appropriate Commonwealth of Pennsylvania hunting license.
   C. Hunters shall abide by all of the Pennsylvania Game Laws and Township Ordinances.
   D. Hunters shall register with the Salisbury Township Police Department, provide all required information, comply with all rules set forth in the established guidelines, and obtain and display the appropriate permit.
   (Twp. Ordinance 04–2004–514; Court's Ex. # 1, 10/11/04.)

5. Section 302, in its entirety, reads:

   *Junior Hunting Program Established:* The Township of Salisbury, by Resolution 06–2003–1123 established the Junior Hunting Program. The aforementioned Resolution was passed June 12, 2003 at a regular public meeting. The Township, in order to

ing Program whereby Junior hunters between the ages of twelve and sixteen years when accompanied by an eligible adult may hunt by shotgun in an area designated a Junior Hunting Area in the Riverside Park Recreation Area during seasons approved by the [Commission].[6] (Trial Ct. Op. at 3.)

On October 11, 2004, a hearing was held before the trial court to determine whether the Township should be permanently enjoined from implementing the Ordinance.

At the hearing, Residents argued that the Ordinance was invalid because it was an attempt by the Township to regulate hunting; they asserted that the Game and Wildlife Code (Game Law), 34 Pa.C.S. §§ 101–2965, preempts all local regulation of hunting. Residents relied in large part on *Duff v. Northampton Twp.*, 110 Pa. Cmwlth. 277, 532 A.2d 500 (1987), *aff'd per curiam*, 520 Pa. 79, 550 A.2d 1319 (1988),

in which this Court held invalid a township ordinance that created its own township "safety zones" and attendant regulations, which were different from the "safety zones" established in the Game Law. After closely examining the Game Law, we determined that "it was intended that the Game Law should not be limited by municipalities." *Id.* at 505. Specifically, we found that the legislature:

through the legislative enactment of the Game Law has provided a general tenor indicating an intention on the part of the Commonwealth that it should not be supplemented by municipal bodies and local legislation. Thus, the Pennsylvania General Assembly has determined that the Game Commission is authorized to regulate hunting and trapping activities within this Commonwealth and the promotion of public safety related thereto. It can only be concluded that the

implement said Resolution, is now specifying the types of hunting permitted for the Junior Hunting Program.

A. From and after the effective date of the aforementioned Resolution, and the effective date of this Part, a Junior Hunting Program is hereby established and a Junior Hunting Area is designated in the Riverside Park recreation area that has been so posted by the Township of Salisbury. This Junior Hunting Program shall be in conformance with the Junior Hunting Program as established by the Pennsylvania Code and the Pennsylvania Game Commission, more specifically at 58 Pa.Code Section 141.8a. A junior hunter license shall be governed by 34 Pa.C.S.A. § 2705, which sets forth the requirements for an individual obtaining a junior hunting license.

B. With regard to the junior hunting area established within Salisbury Township, hunting shall only be permitted in this designated area during the approved hunting seasons as established by the Pennsylvania Game Commission and under the following conditions:

1. Only the use of shotguns shall be permitted.

2. Hunters shall have and display the appropriate Commonwealth of Pennsylvania hunting license.

3. Hunters shall abide by all of the Pennsylvania Game Commission Laws and Township Ordinances regulating the use of this property. Junior hunters shall be qualified in accordance with the Pennsylvania Game Commission Laws.

4. Junior Hunters and their eligible adult sponsor shall register with the Salisbury Township Police Department, provide all information required and comply with all rules set forth in the established guidelines as well as obtain and display the appropriate permits.

5. A Junior Hunter shall qualify in accordance with the Pennsylvania Code and Pennsylvania Statutes, specifically 34 Pa. C.S.A. § 2705 as amended from time to time.

(Twp. Ordinance 04–2004–514; Court's Exhibit # 1, 10/11/04.)

6. Section 303, PENALTY, discusses the penalties imposed for violations of the Ordinance and is, therefore, not relevant to the issue of preemption.

legislature has preempted the field of public safety and the regulation of hunting and trapping by providing the authority and the means for the Game Commission to promote public safety. *Id.* at 506. Based on this finding, we held that the ordinance, which established safety zones throughout the township that were different than the safety zones established by the Game Law, and, so, directly conflicted with it, was therefore preempted by the Game Law. As succinctly stated by the Court in *Duff*, a "municipal ordinance cannot be sustained to the extent that it is contradictory or inconsistent with [a] state statute [operating in the same field or subject matter]. In other words, it cannot permit what a state statute or regulation forbids or prohibit what the state enactments allow." *Id.* at 504–05.

Residents also relied upon an opinion of the Attorney General, issued in 1974, which stated that "regulations regarding areas for hunting and weapons to be used in hunting are exclusively within the province of the [C]ommission" and that ordinances that attempt to regulate hunting are invalid. *Municipal Control Over Hunting*, 64 Pa. D. & C.2d 233 (1974).[7]

The Township argued that it was within its rights as an *owner* of the parks at issue to: (1) permit hunting; (2) restrict who can hunt, i.e., participants in the Junior Hunting Program; and, (3) limit the types of weapons that hunters can use in these parks, i.e., bow and arrow, shotgun.[8] The Township offered the testimony of Commission officer Matthew Teehan, who explained that the Commission has no "regulation[s] on restricting property owners" and does "not restrict private landowners on what they can and can't do on their property, as long as they are within the scope of the law."[9] (N.T. at 24, 25.) In addition, the Township distinguished *Duff* by pointing out that, unlike the municipality there, it was not regulating hunting throughout the Township, but solely on its own property, and property owners do not fall under the authority of the Commission, as long as they stay "within the confines of [Commission] rules and regulations." (N.T. at 49; *see also* N.T. at 54.)

7. Additionally, Residents argued that: (1) a municipality that owns property is not the same as a private individual who owns property because "a private landowner is just one person or two people or whatever" (N.T. at 44); (2) hunting in public parks poses a danger to public safety—particularly to non-hunters (N.T. at 40); (3) the Township is favoring hunters at the expense of non-hunters, who "cannot use this park [Riverside Park] … if there is hunting going on" (N.T. at 43); and, (4) even if the Township can regulate hunting as a property owner, the Ordinance is invalid because it fails to incorporate the Game Law as a whole. (N.T. at 39–40.)

8. The Township further noted that archery hunting had been allowed on the property "for years before." (N.T. at 56.)

9. Teehan testified that property owners are permitted to be more, but not less, restrictive than the Commission in regulating hunting on their own property, and can: (1) decide whether to allow hunting on their land; (2) restrict the number of hunters who may hunt there; (3) restrict the types of firearms that may be used; and, (4) decide what can and cannot be hunted. (N.T. at 10–11.) He also agreed that a public entity that owns property has the same property ownership rights as a private landowner and can, therefore, "impose whatever restrictions it wants to impose in terms of the use of their property for hunting, as long as … not inconsistent with the game laws." (N.T. at 22–24.) Teehan also noted that the Commission's authority to regulate hunting is limited, explaining that it "only has complete authority over state game lands which are owned and controlled by the [Commission]." (N.T. at 25.) In addition, he noted that "[b]y State mandate, the Game Commission is to have no less than two Junior Hunting Programs throughout the year." (N.T. at 8.)

The Township also noted that the Attorney General, in the opinion relied on by Residents, had recognized the right of property owners to regulate hunting on their own land, as well as the right of "municipal corporations" who "possess the same statutory right to restrict hunting on municipally-owned land . . . as any other property owner where the provisions of the Game Law . . . on posting are followed." (N.T. at 51–52, 55–56; *see also Municipal Control*, 64 Pa. D. & C.2d at 237–38.) [10]

By order dated November 15, 2004, the trial court denied Residents' petition to permanently enjoin the Township from implementing the Ordinance,[11] reasoning that the Township was "within its authority as property owner of the park land at issue" to "specify[ ] which forms of hunting may take place on lands it itself owns." (Trial Ct. Order, November 15, 2004, at 2.) Dis-

tinguishing *Duff* on the grounds that the Township was acting as a "landowner in its capacity as a municipal corporation," and was not "regulating behavior as a governmental entity," the trial court concluded that "the concerns giving rise to preemption in *Duff* are not present on these facts." [12] *Id.* This appeal followed.

■ Our standard of review of the denial of a permanent injunction is "whether the lower court committed an error of law. . . ." *Buffalo Twp. v. Jones*, 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002).

■ The trial court did not err by denying Residents' petition to permanently enjoin the Township from implementation of the Ordinance. We note that preemption "is a judicially created principle, based on the proposition that a municipality, as an agent of the state, cannot act contrary

**10.** The Attorney General further explained:

> Consequently, municipal corporations can post municipally-owned parks . . . and thereby prohibit hunting in such areas irrespective of the general authority of the [Commission] to control hunting in all areas of the Commonwealth.

64 Pa. D. & C. 2d at 238 (1974)(citing the Act of June 3, 1937, P.L. 1225 (repealed by Section 7 of the Act of July 8, 1986, P.L. 442)). The repealing act also established the present Game Law.

**11.** In denying Residents' petition for relief, the trial court dissolved the preliminary injunction it had originally entered against the Township as a result of the notice and publication defect in Ordinance No. 10–2003. As we previously noted, in issuing the preliminary injunction, the trial court did not reach the merits of Residents' preemption claim. However, the trial court's decision to dissolve the preliminary injunction was made after a hearing on the merits of the preemption issue; that is, the trial court made a final determination that the Ordinance is not preempted by the Game Law. As a result, the trial court's order actually denies the request for a permanent injunction. This distinction is important

for our purposes because we therefore review the trial court's determination, not as a dissolution of a preliminary injunction, for which the appropriate scope of review is "whether the court below had reasonable grounds for its action," *Rubin v. Bailey*, 398 Pa. 271, 275, 157 A.2d 882, 884 (1960), but rather as a denial of a permanent injunction, for which our review is limited to whether the trial court committed an error of law. *Buffalo Twp. v. Jones*, 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002).

**12.** The trial court also rejected Residents' argument that the Township was unfairly favoring hunters over non-hunters, noting that our Supreme Court, in *City of Newcastle v. Lawrence County*, 353 Pa. 175, 44 A.2d 589, 592 (1945), had stated that "whether a municipality decides to devote land to, say, a public library or a public golf course, the land is nevertheless properly deemed to be in use as a 'public park,' despite the fact that such uses are necessarily to the exclusion of all others." (Trial Ct. Order at 2.) Accordingly, the trial court concluded that "[a] municipality's decision to set park land aside for a Junior Hunting Program to be enjoyed by less than all its residents can meet with no less judicial approbation in this respect." *Id.*

to the state." *Duff*, 532 A.2d at 503. In *Council of Middletown Twp. v. Benham*, the Supreme Court stated that "[t]he test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies.' " 514 Pa. 176, 181, 523 A.2d 311, 313 (1987) (quoting *Western Pennsylvania Rest. Ass'n v. Pittsburgh*, 366 Pa. 374, 381, 77 A.2d 616, 620 (1951)). "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted." *Id.* In *Duff*, our Court applied a five-question test to determine whether the local ordinance was preempted by state law.[13]

Before this Court, Residents argue that the trial court erred as a matter of law by neglecting to apply the *Duff* test for preemption.[14] Because we determine that the Township was not acting as a *municipali-*ty, but rather as a *property owner* when it enacted the Ordinance, we disagree with Residents that the preemption test set forth in *Duff* applies here.

Residents, while relying heavily on this Court's reasoning in *Duff*, ignore an important distinction between that case and the one before us. In *Duff*, a township enacted an ordinance regulating hunting throughout the township inconsistently with the Game Law, based on its police powers—that is, as a governmental entity. Here, however, the Township enacted the Ordinance, in compliance with the Game Law, based on its rights as a property owner of the two parks.[15] *Duff*, therefore, was properly distinguished by the trial court.

The trial court correctly determined that townships are not precluded by the Game Law from exercising the same rights, with regard to property they own, as any other property owner can exercise under the Game Law. The record reflects, *inter*

---

13. We asked:
    (1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted? (2) Was the state law intended expressly or impliedly to be exclusive in the field? (3) Does the subject matter reflect a need for uniformity? (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?
    *Duff*, 532 A.2d at 505.

14. Residents, in their "Statement of the Question Involved," phrase the issue as, "When a state statute conflicts with a local ordinance does the state statute preempt the local ordinance?" In the "Argument for Appellant" section of their brief, they assert that "the trial court committed an error of law by neglecting to complete a thorough analysis of whether the local ordinance was in direct conflict with the state statute utilizing the necessary preemption questions established through binding case law." (Residents' Br. at 10.)
    Residents also make public safety arguments similar to, if not the same as, those they made before the trial court. For example, they argued that a township does not—or, at least, should not—have the same property ownership rights as an individual who owns property because public parks are open to the public at large, whereas an individual's property is not; unlike township-landowners, individual-landowners do not "put the public at risk." Residents also reassert that the Ordinance fails to incorporate the Game Law as a whole and, therefore, "clearly jeopardizes the safety of hunters and non-hunters alike." (Residents' Br. at 9.)

15. At the October 11th hearing, the Township stated, "The fact that it's an ordinance, is the only way we can regulate property. We have to pass an ordinance to decide what to do on our property, but it's our property." (N.T. at 55.)

*alia,* the testimony of the Commission officer, the lack of objection to the Ordinance by the Commission,[16] as well as the opinion of the Attorney General regarding municipal landowners,[17] which support the trial court's determination that, as long as property owners impose restrictions that are at least as restrictive as those contained in the Game Law and set by the Commission, they are within their rights to "regulate" hunting on their own property.

■ We find additional authority to support the proposition that the Game Law does not preempt municipalities from "regulating" hunting on municipally-owned property, including parks. Section 2508 of the Game Law, 34 Pa.C.S. § 2508, states that the general rule making it "unlawful ... to hunt [on] ... or to discharge a firearm or bow ... into or upon ... [the] premises of any *park* ... set aside for the use of the public where people may congregate in the open for health, recreation or pleasure," does not apply to "[a]ny part of the lands of any ... *park* ... which lie outside of the posted areas and are *open to the public for hunting.*" (Emphasis added.) Likewise, the Attorney General, in *Municipal Control,* has recognized that municipalities can "prohib-

it hunting" in "municipally-owned *parks.*" 64 Pa. D. & C.2d at 237–38 (emphasis added). Residents assert that hunting should not be allowed in public parks; however, this is an issue for their elected officials to decide.

Consequently, we disagree with Residents' assertion that the trial court erred by finding that the Ordinance is not preempted by the Game Law. Preemption is applicable where a township has acted to regulate hunting as a township; that is, throughout the municipality. This Ordinance, however, is applicable only to the properties owned by the Township itself. The Township has exercised its authority, as any other property owner may, to "regulate" hunting on its property, consistent with the Game Law.[18] There is no authority to suggest that municipalities that own property are treated differently than individuals under the Game Law with respect to property ownership rights.

Accordingly, we affirm the order of the trial court denying Residents' request for permanent injunctive relief.

### ORDER

NOW, August 3, 2005, the order of the Court of Common Pleas of Lehigh County

---

**16.** In *Duff,* the Commission did "object" to the township ordinance, supporting the petitioners there as *amicus curiae.* 532 A.2d at 501.

**17.** Although the opinions of the Attorney General are not binding on our Court, we recognized in *Com. ex rel. Pappert v. Coy,* that "the courts customarily afford great weight to official opinions of the Attorney General." 860 A.2d 1201, 1208 (Pa.Cmwlth.2004)(citing *Dep't of the Auditor Gen. v. State Employees' Ret. Sys.,* 836 A.2d 1053 (Pa.Cmwlth.2003) (citations omitted)); *see also Baird v. Twp. of New Britain,* 159 Pa.Cmwlth. 333, 633 A.2d 225, 229 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994) ("While opinions of the Attorney General are not binding on this court, they are entitled to great weight.").

**18.** Additionally, we find no support for Residents' claim that the Ordinance "fails on its face to include specifically or incorporate by reference all of the provisions of the [Game Law]." (Residents' Br. at 9.) The text of the Ordinance clearly states, *inter alia,* that "Hunters shall abide by all of the Pennsylvania Game Laws" and the "Junior Hunting Program shall be in conformance with the Junior Hunting Program as established by the Pennsylvania Code and the Pennsylvania Game Commission, more specifically at 58 Pa.Code Section 141.8a. A junior hunter license shall be governed by 34 Pa.C.S.A. § 2705, which sets forth the requirements for an individual obtaining a junior hunting license." (Twp. Ordinance 04–2004–514; Trial Ct. Ex. # 1, 10/11/04.)

in the above-captioned matter is hereby affirmed.