*1174 OPINION BY
JUDGE McCullough [1]
Firearm Owners Against Crime (FOAC), Kim Stolfer, and Joseph Abram-son (collectively “Firearm Owners”) appeal the August 26, 2015 order of the Court of Common Pleas of Montgomery County (trial court) denying their motion for a preliminary injunction.
Facts and Procedural History
In 2011, Lower Merion Township (Township) passed an ordinance amending section 109-16 of its Code (Ordinance) to prohibit persons from “carry[ing] or disc-harg[ing] firearms of any kind in a park without a special permit, unless exempted.” Lower Merion Township, Pa., Code § 109-16. The Ordinance imposes a maximum fine of $600.00 per violation and authorizes the police to remove violators from Township parks or recreation areas.[2]
In 2014, FOAC contacted the Township and alleged that the Ordinance violated section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA)[3] because it improperly restricted firearm possession in Township parks. Upon review, the Township determined that the Ordinance was consistent with the UFA because it only prohibited the unlawful possession of firearms in parks and, therefore, chose not to repeal or revise it. FOAC subsequently conducted a rally in a Township park where many of its members carried firearms; however, no citations were issued and no threats of prosecution were made.
On March 20, 2015, Firearm Owners filed a complaint against' the Township seeking declaratory and injunctive relief and alleging that the Ordinance violated Article 1, Section 21 of the Pennsylvania Constitution[4] and was preempted by the UFA. On April 14, 2015, the Township filed preliminary objections to Firearm Owners’ complaint, as well as a motion to stay proceedings, arguing, inter alia, that Firearm Owners lacked standing to challenge the Ordinance.[5]
On May 8, 2015, Firearm Owners filed a motion for preliminary injunction. In their motion, Firearm Owners alleged that: the Ordinance’s violation of the Pennsylvania Constitution and the UFA constituted per se immediate and irreparable harm; greater injury would result from refusing the injunction than granting it because Firearm Owners would face prosecution and be deprived of their constitutional and statutory rights; an injunction would restore *1175 the parties to their status as it existed prior to the alleged wrongful conduct; and Firearm Owners are likely to prevail on the merits because the Township’s enactment of the Ordinance is preempted and, therefore, prohibited.
The Township filed an answer to Firearm Owners’ motion, asserting that there is no evidence indicating that the Township ever enforced the Ordinance against any party and, therefore, any harm alleged was speculative and insufficient to warrant issuance of a preliminary injunction. Additionally, the Township argued that: more harm would result from granting the injunction than refusing it because prohibiting the unlawful possession of firearms is essential to the safety of the Township’s residents; the issuance of injunction will not restore the parties to their status as it existed prior to the alleged wrongful conduct; and Firearm Owners are not likely to prevail on the merits of their claim because, inter alia, the Ordinance does not violate the UFA as it only regulates'the unlawful possession of firearms in Township parks.
By order dated August 26, 2015, the trial court denied Firearm Owners’ motion for preliminary injunction. The trial court reasoned that Firearm Owners’ claims are uncertain and, therefore, “the matter is not ripe for a preliminary injunction.” (Trial court op. at 4.) Additionally, the trial court determined that Firearm Owners failed to meet their burden to prove immediate and irreparable injury because the alleged injury was’ speculative. The trial court also noted that the Township proffered weighty arguments against Firearm Owners’ claim that they are likely to succeed on the merits, citing this Court’s decision in Minich v. County of Jefferson, 869 A.2d 1141 (Pa. Cmwlth.) (en banc), appeal denied, 585 Pa. 700, 889 A.2d 90 (2005).
On appeal to this Court,[6] Firearm Owners reiterate the arguments they made before the trial court. Specifically, Firearm Owners assert that the trial court erred in denying their motion for preliminary injunction because the Ordinance is preempted by the Pennsylvania Constitution and the UFA, all of the necessary prerequisites are met, and, therefore, issuance of a preliminary injunction is proper.
Discussion
Preliminary Injunction
The essential prerequisites of a preliminary injunction are: 1) the injunction is necessary to prevent immediate and irreparable harm not compensable in money damages; 2) greater injury will result from refusing the injunction than from granting it; 3) the injunction restores the parties to status quo ante-, and 4) the activity sought to be restrained is actionable and the plaintiffs right to relief is clear. Dillon v. City of Erie, 83 A3d 467, 470 n.1 (Pa. Cmwlth. 2014) (en banc). “Because one of the elements which the moving party must establish is that ‘his right to relief is clear,’ it is of course necessary that the moving party be able to show that he has a reasonable likelihood of success on the merits.” Lewis v. City of Harrisburg, 158 Pa.Cmwlth. 318, 631 A.2d 807, 810 (1993).
Firearm Owners’ Right to Relief
Section 6120(a) of the UFA provides, in relevant part, that “[n]o county, *1176 municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms ,18 Pa.C.S. § 6120(a).
The Pennsylvania Supreme Court’s decision in Ortiz v. Commonwealth, 545 Pa. 279, 681 A.2d 152 (1996), is instructive because it delineates the relationship between state and local firearm regulation. In Ortiz, Philadelphia and Pittsburgh passed ordinances regulating certain types of assault weapons within their respective geographic regions. After the ordinances were passed, the Pennsylvania General Assembly amended the UFA to add section 6120(a)’s current language. Thereafter, Philadelphia city councilmembers and others filed. a petition for declaratory and injunctive relief, seeking to enjoin the Commonwealth’s preemption of Philadelphia’s regulation of assault weapons as well as a. declaration that the amendment is unconstitutional and violates the city’s home rule charter and the First Class City Home Rule Act.[7] The Commonwealth filed preliminary objections, which this Court granted for failure to state a cause of action, and the petitioners appealed.
On appeal, the Pennsylvania Supreme Court stated that;
The sum of the case is that the Constitution of Pennsylvania requires that home rule municipalities may not perform any power denied by the General Assembly; the General Assembly has denied all municipalities the power to regulate the ownership, possession, transfer or possession of firearms; and the municipalities seek to regulate that which the General Assembly has said they may not regulate. The inescapable conclusion, unless there is more, is that the municipalities’ attempt to ban the possession of certain types of firearms is constitutionally infirm.
Id. at 155 (emphasis added).
Nevertheless, the petitioners argued, inter alia, that a home rule municipality’s power may be restricted only when the General Assembly has enacted a statute on a matter of statewide concern. The Supreme Court noted that:
Although we agree with appellants that the General Assembly may negate ordinances enacted by home rule municipalities only when the General Assembly’s conflicting statute concerns substantive matters of statewide concern, this does not help the municipal appellants, for the matters at issue in this case are substantive matters of statewide concern.
Id. at 156 (emphasis added). The Supreme Court then cited Article 1, Section 21 of the Pennsylvania Constitution and stated that:
Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation.
Id. (emphasis added). Accordingly, the Pennsylvania Supreme Court affirmed this Court’s order sustaining the Commonwealth’s preliminary objections for failure to state a cause of action.
*1177 , The Township would have us distinguish the instant appeal from Ortiz based on its assertion that the Ordinance purports to regulate only the unlawful possession of firearms and that, consequently, Firearm Owners’ right to relief is not clear. It relies upon our decision in Minich for this proposition. ' ‘
The Township’s reliance on Minich is misplaced. In Minich, the county enacted an ordinance prohibiting individuals from possessing weapons in any county building and mandating that a point-of-entry search be performed on every person entering the county court house. Subsequently, the plaintiffs attempted to enter the county court house while possessing concealed handguns for which they had valid permits; however, the plaintiffs were denied entry when they refused to submit to a point-of-entry .search. Thereafter, the plaintiffs filed a complaint seeking declaratory and injunctive relief, asserting that section 6120(a) of the UFA preempted the regulation of firearm possession in a court facility. The trial court agreed and declared the ordinance null and void. We reversed the trial court, however, because section 913(f) of the Crimes Code[8] already prohibited the unlawful possession of firearms in the county court house’s first floor hallway because it constitutes an “adjoining corridor” of a “court facility,” Thus, we held that section 6120(a) of the UFA does not preempt the county’s ordinance because it does not regulate the “lawful” possession of firearms; rather, it only regulates possession that the General Assembly has already deemed unlawful and, therefore, does not conflict with the UFA.
Unlike the ordinance in Minich, the subject Ordinance, by its terms does not solely regulate the possession of firearms that the General Assembly has already decided to be unlawful. The Ordinance is a broad proscription against carrying or discharging any kind of firearm in a park absent a “special permit” unless exempted. Unlike Minich, the Township does not point to any corresponding provision in the Crimes Code that contains such a blanket ban of firearm possession in a park. Further, the Township’s argument that the UFA does not preempt a municipality’s regulation of unlawful firearm possession was expressly rejected by this Court in National Rifle Association v. City of Philadelphia, 977 A.2d 78 (Pa. Cmwlth. 2009).
In City of Philadelphia, the city of Philadelphia enacted five ordinances in an effort to regulate the ownership and transfer of firearms in the city.[9] The National Rifle Association (NRA), various NRA members, a sporting foundation, a 'state association of firearms retailers, and two local firearm retailers filed an action seeking *1178 declaratory and injunctive relief, asserting that the ordinances were unconstitutional and preempted by section 6120(a) of the UFA. The trial court issued a preliminary injunction and, after a hearing, permanently enjoined the city from enforcing the “Assault Weapons Ordinance” and the “Straw Purchaser Ordinance” because it determined they were preempted by state law; however, the trial court concluded that the plaintiffs failed to establish standing to challenge the remaining three ordinances.
On appeal to this Court, the city argued that section 6120(a) of the UFA does not preempt all regulation of firearms; instead, the city averred that it is authorized to regulate in more detail that which the state has already made unlawful so long as it does not intrude “ ‘within the zone that has been expressly preempted by the Commonwealth,’ i.e., the regulation of lawful activity.” Id. at 80. According to the city, it was not precluded from enacting the ordinances because section 6120’s plain language indicates that the General Assembly intended only to preclude local regulation of “lawful” activity, not unlawful activity. Conversely, the plaintiffs argued that the city is preempted from enacting any gun control ordinance pursuant to statewide preemption under section 6120(a) of the UFA. We acknowledged Ortiz and reasoned that:
[T]he fact that the Court in Ortiz did not discuss the statutory language relied upon by the City [i.e., “lawful”] does not provide a legitimate basis for us to ignore its holding. Unfortunately, with respect to the matter before us, while we may agree with the City that preemption of 18 Pa.C.S. § 6120(a) appears to be limited to the lawful use of firearms by its very terms, we believe, however, that the crystal clear holding of our Supreme Court in Ortiz, that, “the General Assembly has [through enactment of § 6120(a)] denied all municipalities the power to regulate the ownership, possession, transfer, or [transportation] of firearms,” precludes our acceptance of the City’s argument and the trial court’s thoughtful analysis on this point.
Id. at 82-83 (emphasis in original) (internal footnote omitted). Accordingly, we affirmed the trial court’s order permanently enjoining the city from enforcing the two ordinances that the plaintiffs had standing to challenge.
According to the Township and the trial court, this Court’s decision in Minich “supports the notion that the Ordinance is not clearly at odds with the UFA” because the Ordinance regulates only the unlawful possession of firearms and, consequently, Firearm Owners’ right to relief is not clear. (Trial court op. at 4 n.3). Additionally, the Township asserts that the language in City of Philadelphia that contradicts Minich’s holding is dicta and the city’s argument therein was distinguishable because, although the city purported to regulate unlawful conduct, it was actually restricting lawful conduct. Conversely, Firearm Owners argue that the Pennsylvania Supreme Court’s decision in Ortiz and this Court’s decision in City of Philadelphia dictate that the Township is preempted from regulating firearm possession in any manner.
Here, contrary to the Township’s averment, it is irrelevant whether the city in City of Philadelphia believed the conduct it was regulating was unlawful. Rather, the critical upshot is our recognition that Ortiz’s “crystal clear holding” prohibits this Court from endorsing the argument that a cognizable distinction exists between regulating lawful activity and unlawful activity. 977 A.2d at 82. Moreover, we disagree with the Township’s characterization of the language in City of Philadelphia-, it was not *1179 dicta because it was essential to our holding.
Therefore, the trial court’s conclusion that Firearm Owners’ right to relief was not clear based on Minich was erroneous: the activity Firearm Owners seek to restrain is actionable and, pursuant to Ortiz and City of Philadelphia, their right to relief is clear.
The Township’s Authority to Regulate on its Property
The Township also argues that it is authorized to regulate the possession of firearms in its parks based on its rights as a property owner and cites this Court’s decision in Wolfe v. Township of Salisbury, 880 A.2d 62 (Pa. Cmwlth. 2005), for support.
In Wolfe, the township enacted various ordinances regulating hunting in its parks. Subsequently, a number of the township’s residents filed a petition to permanently enjoin the township from implementing its ordinances, asserting that the Game and Wildlife Code (Game Law), 34 Pa.C.S. §§ 101-2965, preempts all local regulation of hunting, citing Duff v. Northampton Toimship, 110 Pa.Cmwlth. 277, 582 A.2d 500 (1987), which invalidated a township ordinance that created its own “safety zones” which differed from the “safety zones” established in the Game Law. The trial court denied the petition and the residents appealed to this Court. On appeal, the residents argued that the trial court erred in failing to apply the Duff test for preemption. We reasoned that Wolfe was distinguishable from Duff because, in Wolfe, the township acted as a property owner regulating only municipal-owned property rather than acting as a township regulating throughout the municipality. Specifically, we stated:
Residents, while relying heavily on this Court’s reasoning in Duff, ignore an important distinction between that case and the one before us.' In Duff, a township enacted an ordinance regulating hunting throughout the township inconsistently with the Game Law, based on its police powers—that is, as a governmental entity. Here, however, the Township enacted the Ordinance,' in compliance with the Game Law, based on its rights as a property owner of the two parks.
Wolfe, 880 A.2d at 68 (emphasis added).
Moreover, we found persuasive section 2508 of the Game Law, which contained statutory exceptions that authorized hunting in parks under certain circumstances notwithstanding the general rule prohibiting hunting in parks. See 34 Pa.C.S. § 2508(c)(2). Thus, we affirmed the trial court’s determination that “as long as property owners impose restrictions that are at least as restrictive as those contained in the Game Law and set by the Commission, they are within their rights to ‘regulate’ hunting on their own property.” Wolfe, 880 A.2d at 69.
We find the present matter distinguishable from Wolfe because, here, pursuant to Ortiz and City of Philadelphia, the Ordinance is not consistent with the UFA. Rather, the UFA explicitly prohibits a township from regulating “in any manner” and contains no express exemptions authorizing a township to enact ordinances permitting firearm regulation on its property, i.e., parks, comparable to that contained in the Game Law. Additionally, it is not clear whether the Ordinance was promulgated pursuant to the Township’s police powers or based on its rights as a property owner; however, the fact that the Ordinance authorizes the police to remove violators from Township parks suggests the Township’s police power is the basis for the Ordinance rather than its property-owner rights. Therefore, the Township’s argu *1180 ment that Firearm Owners’ right to relief is not clear based on its authority to regulate its parks as a property owner pursuant to Wolfe is unpersuasive.
Immediate and Irreparable Harm
The Township also argues that Firearm Owners cannot demonstrate immediate and irreparable harm because the Ordinance has never been enforced against them, nor were they ever threatened with prosecution under the Ordinance,
This Court has stated that the violation of an express statutory provision constitutes per se irreparable harm and a preliminary injunction may issue where the other necessary elements are met. Council 13, American Federation of State, County and Municipal Employees, AFL-CIO v. Casey, 141 Pa.Cmwlth. 199, 595 A.2d 670, 674 (1991).
Here, as explicated above, regardless of the persuasiveness of the Township’s argument, our binding case law mandates that the Ordinance is preempted by section 6120(a) of the UFA and, therefore, the Township’s enactment of the same violates the UFA. Thus, issuance of a preliminary injunction is necessary to prevent immediate and irreparable harm, i.e., the continued statutory violation.[10]
*1181 Balance of Injuries
The Township next argues that it would suffer substantial harm if the Ordinance was enjoined because it is essential to the safety of Township residents and to the public’s use and enjoyment of Township parks. ' However, contrary to ' the Township’s assertion, we have stated that “[w]hen the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public.” Dillon, 83 A.3d at 474.
Thus, we conclude that greater injury would result from refusing an injunction than granting it becáuse refusing an injunction would sanction the Township’s continued statutory violations of the UFA and, therefore, be 'injurious to Firearm Owners and the public.
Status Quo
“The status quo ante to be preserved by a preliminary injunction is the last actual, peaceable, lawful, noncontested status which preceded the pending controversy.” Dillon, 83 A.3d at 472 n.7.
Here, the last noncontested status existed prior to the Township’s enactment of the Ordinance. Therefore, an injunction enjoining the Ordinance would restore the parties to their last uncontested status and preserve the status quo.
Conclusion
Contrary to the trial court’s determination,' this Court’s decision in Minich does not support the notion that the Ordinance is consistent with the UFA nor raise doubts regarding Firearm Owners’ right to relief. Rather, our decision in City of Philadelphia expressly rejected the argument the Township proffered in the present matter, i.e., that the regulation of unlawful firearm possession is consistent with the UFA. Therefore, the trial court’s determination that Firearm Owners’ right to relief is not clear was erroneous. Moreover, Firearm Owners have met the additional, essential prerequisites for issuance of a preliminary injunction.
Accordingly, because there are no apparently reasonable grounds for the trial *1182 court’s decision, the trial court’s order is reversed.
Judge Covey did not participate in this decision.

ORDER

AND NOW, this 16th day of December, 2016, the August 26, 2015 order of the Court of Common Pleas of Montgomery County is reversed.

. This opinion was reassigned to the Author on June 2, 2016.

. See Lower Merion Township, Pa., Code § 109-21 (imposing civil penalties).

. Act of October 18, 1974, P.L. 768, as amended, 18 Pa.C.S. § 6120(a). Notably, in Leach v. Commonwealth, 141 A.3d 426 (Pa. 2016), the Pennsylvania Supreme Court invalidated Act No. 192 of 2014 (Act 192) because it violated the Pennsylvania Constitution’s single-subject rule. Act 192 amended four sections of the Crimes Code, including the UFA. Specifically, Act 192 added sections 6120(a.2) and (a.3), which allowed anticipatory challenges to local laws and authorized the court to award reasonable expenses for a successful challenge to the same. However, notwithstanding Leach, section 6120(a) of the UFA remains valid because it was codified prior to the enactment of Act 192 and does not suffer from the same constitutional infirmity.

. Article 1, Section 21 of the Constitution of the Commonwealth of Pennsylvania provides that "[t]he right of the citizens to bear arms in defence of themselves and the State shall not be questioned.” PA. Const, art. 1, § 21.

. By order dated May 13, 2015, the Township’s motion for stay was denied and, by order dated July 7, 2015, the Township's preliminary objections were overruled in part and sustained in part. (Reproduced Record (R.R.) at la-2a.)

. Our scope of review of the grant or denial of a preliminary injunction is a narrow one; we must examine the record to determine whether there were any apparently reasonable grounds for the lower court’s decision. Dillon v. City of Erie, 83 A.3d 467, 472, n.7 (Pa. Cmwlth. 2014) (en banc). “Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court].” Id.

. Act of April 21, 1949, P.L. 665, as amended, 53P.S. §§ 13101-13157.

. Act of June 13, 1995, P.L. 1024, as amended, 18 Pa.C.S. § 913(f).

. The ordinances may be summarized as' follows: "Imminent Danger Ordinance,” authorizes the temporary removal of firearms from persons found by the court, .upon affidavit of two police officers or a district attorney, to pose a risk of imminent harm to ■ themselves or others; “Protection From Abuse Ordinance," prohibits persons subject to an active protection from abuse order from acquiring or possessing firearms when such order provides for confiscation of the firearms; "Lost or Stolen Gun Ordinance,” requires gun owners to report their lost or stolen firearms to law enforcement officials within twenty-four hours. after discovery of the loss or theft; "Assault Weapons Ordinance,” prohibits the possession, sale and transfer of certain offensive weapons, including assault weapons, as well as certain contraband accessories or ammunition; and, "Straw Purchaser Ordinance,” prohibits any person when purchasing a handgun from acting as a straw purchaser and prohibits the purchase of more than one handgun within any thirty-day period, except for any person who is not a straw- purchaser. City of Philadelphia, 977 A.2d at 79-80.

. Although the parties have not raised the issue of standing and the trial court did not consider the same, the Dissent maintains that “because there have been no threats by the Township of bringing an action for a civil penalty against anyone, FOAC has no standing to maintain this action.” Dissent op. at 1184. However, the question of standing is not an issue of subject matter jurisdiction and, therefore, may not be raised sua sponte. Hertzberg v. Zoning Hearing Board of Adjustment of City of Pittsburgh, 554 Pa. 249, 721 A.2d 43, 46 n.6 (1998), Nevertheless, even if standing was at issue, FOAC has established a sufficient injury to obtain judicial review pursuant to this Court’s decision in National Rifle Association v. City of Pittsburgh, 999 A.2d 1256 (Pa. Cmwlth. 2010), where this Court considered a factual situation similar to the present matter, but distinguishable on the most important issue of standing.
In. City of Pittsburgh, a firearm advocacy group and four individual gun owners (collectively, the appellants) challenged a city ordinance requiring gun owners to report missing Or stolen'- guns. In their complaint seeking declaratory relief, three individual gun owners alleged that they lived in areas where residential burglaries were common and the fourth alleged that a gun belonging to him had been stolen; however, he failed to specify whether the theft occurred before or after the ordinance was enacted. The city filed preliminary objections, asserting that the appellants lacked standing to challenge the ordinance, The trial court sustained the city’s preliminary objections and dismissed the complaint,
On appeal to this Court, we affirmed the trial court, relying on our decision City of Philadelphia and reasoning that;
The individual Appellants in this case, like the plaintiffs in Philadelphia, have never violated the ordinance, do not allege that they would disobey the ordinance if one of their guns is lost or stolen, and do not allege that a gun has been lost or stolen since the ordinance has been enacted. One of the individual Appellants in this case would not be fined under the ordinance unless he had a gun stolen or lost, failed to report it, and was prosecuted for that failure. Because, as in Philadelphia, the possibility of harm is remote and speculative, Appellants lack standing.
Id. at 1259 (emphasis added).
Standing was denied because, as this Court noted, the appellants had never violated the ordinance or alleged that they would violate the same. Indeed, Judge Brobson, in a dissenting opinion, noted that the majority’s holding, restricts who may file a pre-enforcement challenge to the ordinance to a person who "(a) admits that he or she has already violated the ordinance in question or (b) commits to violating the law.” Id. at 1261 (Brob-son, J. dissenting) (emphasis added). By limiting the class of persons who may file a pre-enforcement challenge in that way, Judge Brobson stated that;
We must not presume that the citizens of the Commonwealth will blithely choose to violate a law and risk criminal sanctions for the sole purpose of proving the law’s invalidity any more than we should *1181 presume that a local government would enact a law, regulation, or ordinance that it has no intent to enforce.
Id. (Brobson, J. dissenting).
City of Pittsburgh is informative because it contemplates conferring standing on litigants who have violated an ordinance even if no enforcement action has occurred. In the present matter, it is undisputed that FOAC and many of its members conducted a rally in a Township park while carrying firearms in violation of the- Ordinance, although no citations were issued and no threats of prosecution were made. Indeed, pursuant to City of Pittsburgh, the fact that FOAC violated the • Ordinance is sufficient to confer standing to obtain judicial review. As Judge Brobson explained in his dissent to City of Pittsburgh, we cannot presume that a local government would enact an ordinance -it has-no intention of enforcing. Thus, although the Township did not enforce the Ordinance when FOAC and its members conducted a rally in its park, we must not presume that it will act similarly if another rally is performed or an individual violates the Ordinance. Here, unlike City of Pittsburgh, the injury alleged is not speculative; the operative act has already occurred,
Additionally, it is disconcerting that, by deliberately failing to enforce the Ordinance, the Township could essentially determine who may challenge the Ordinance and when that • challenge will occur. The Township should not be the entity determining when and who may invoke judicial review by arbitrarily enforcing the Ordinance; rather, that determination is within the purview of the courts and should be determined by the relevant facts and constitutional considerations.
Accordingly, if this Court were authorized to consider standing sua sponte, it is apparent that FOAC has established a sufficient injury to confer standing pursuant to City of Pittsburgh because it has violated the Ordinance notwithstanding that the Township failed to enforce the same,