NATIONAL RIFLE ASSOCIATION, Shawn Lupka, Curtis Reese, Richard Haid and Jeffrey Armstrong, Appellants

v.

CITY OF PITTSBURGH, Pittsburgh City Council, and Mayor Luke Ravenstahl, in his capacity as Mayor of the City of Pittsburgh.

Commonwealth Court of Pennsylvania.

Argued April 20, 2010.

Decided June 25, 2010.

Reargument En Banc Denied Aug. 18, 2010.

Meghan E. Jones–Rolla, Pittsburgh, for appellants.

John F. Doherty, Pittsburgh, for appellees.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge LEADBETTER.

This case is an appeal by the National Rifle Association (NRA) and four Pitts-

burgh gun owners (Individual Appellants) from the decision of the Court of Common Pleas of Allegheny County, which sustained the preliminary objections of the City of Pittsburgh, its City Council, and its Mayor (collectively, City) and dismissed a declaratory judgment action seeking to invalidate a City ordinance which requires gun owners to report missing or stolen guns. The court determined that the NRA and the Individual Appellants (collectively, Appellants) lacked standing.

The ordinance in question mandates that "[n]o person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within twenty-four (24) hours after the discovery of the loss or theft." Pittsburgh City Code § 624.01. First-time violations are punishable by a fine of up to $500, and subsequent violations are punishable by a fine of up to $1000 and/or imprisonment of up to 90 days.

Shortly after the ordinance was adopted, Appellants filed suit seeking a declaratory judgment that the ordinance was invalid and an injunction barring its enforcement. They alleged that the ordinance was invalid on its face and an *ultra vires* act because it was preempted by the Uniform Firearms Act (UFA), 18 Pa.C.S. §§ 6101–6126. The UFA provides that: "No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120(a).

The complaint alleged that the Individual Appellants lived in Pittsburgh, owned guns and had valid permits to carry concealed weapons. In addition, three of the Individual Appellants alleged that they lived in areas where residential burglaries are common, and the fourth alleged that a gun belonging to him had been stolen, without specifying if the theft occurred before or after the ordinance was enacted. The City filed preliminary objections to standing and ripeness; common pleas sustained the objection to standing and dismissed the complaint. An appeal to this court followed.

■ In general, to have standing in a declaratory judgment action, a plaintiff must show that he or she is aggrieved. A litigant successfully makes a showing that he or she is aggrieved if:

> [H]e can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation.... An interest is "substantial" if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring obedience to the law. Likewise, a "direct" interest mandates a showing that the matter complained of caused harm to the party's interest, i.e., a causal connection between the harm and the violation of law. Finally, an interest is "immediate" if the causal connection is not remote or speculative.

*Pittsburgh Palisades Park, LLC v. Com.*, 585 Pa. 196, 204, 888 A.2d 655, 660 (2005) (internal citations and quotations omitted).

■ This court considered the standing of the NRA and resident gun owners to challenge a similar ordinance in *National Rifle Association v. City of Philadelphia (Philadelphia)*, 977 A.2d 78 (Pa.Cmwlth. 2009) *(en banc)*. In that case, the NRA and several Philadelphia gun owners challenged a number of Philadelphia's gun-related ordinances, including a theft reporting ordinance that appears to be identical to the one at issue in this case. The individual plaintiffs in that case alleged that they owned guns and lived in the jurisdiction, but did not allege that their guns had ever been stolen. With respect

to the theft reporting ordinance, this court affirmed and adopted the decision below, written by then-Judge Greenspan.[1] *Philadelphia* at 81–82.

Justice Greenspan's opinion in *Philadelphia* concluded that the plaintiffs lacked standing to challenge the reporting ordinance because they had not demonstrated direct and immediate harm. *National Rifle Association v. City of Philadelphia,* CCP Philadelphia County, April Term, 2008, No. 1472, filed July 1, 2008, slip opinion at 7–9, 2008 WL 5746554 (henceforth *Greenspan Opinion*). She reasoned that the possibility that one of the plaintiffs might lose a gun in the future, fail to report it, and then be punished was remote and speculative.

The only difference between the facts in *Philadelphia* and the pleadings in this case are that three of the Individual Appellants have pled that they live in areas where residential burglaries are common, and one has pled that a gun of his was stolen in the past. These differences are insufficient to confer standing.

In their brief, Appellants take one line from the Greenspan Opinion and argue that it proves standing in this case. In summing up her opinion, Justice Greenspan wrote, "plaintiffs have failed to show any evidence that any one of them has had a weapon stolen or lost from their collection at any time.... Thus, the line between this possible future illegal conduct and plaintiffs' alleged injury is too attenuated." *Greenspan Opinion,* slip opinion at 9. Appellants argue that this logic works in reverse: that because one Individual Appellant in this case has had a weapon stolen, standing has been demonstrated. However, this simply does not follow; common pleas was evaluating the sufficiency (or lack thereof) of the facts before it, not opining on what facts would be sufficient to establish standing in future cases. Therefore, we must consider whether the averments in Appellants' complaint in this case are sufficient to establish direct and immediate harm.

Despite the fact that one of Appellants has had a gun stolen at some time in the past, the Individual Appellants have not alleged the direct and immediate harm standing requires. Because Appellants do not allege that the gun was stolen while the ordinance was in force, the facts as pled do not bring them any closer to establishing sufficient harm under the ordinance than the plaintiffs in *Philadelphia.* The Individual Appellants in this case, like the plaintiffs in *Philadelphia,* have never violated the ordinance, do not allege that they would disobey the ordinance if one of their guns is lost or stolen, and do not allege that a gun has been lost or stolen since the ordinance has been enacted. One of the Individual Appellants in this case would not be fined under the ordinance unless he had a gun stolen or lost, failed to report it, and was prosecuted for that failure. Because, as in *Philadelphia,* the possibility of harm is remote and speculative, Appellants lack standing.

Appellants make a number of additional arguments to demonstrate standing, including that the ordinance impermissibly burdens their right to bear arms, creates an affirmative duty to inventory firearms and, as a violation of a statute, is hardship *per se.* However, these arguments fail because they are controlled by *Philadelphia.* All three of these arguments are unaffected by the factual differences between this case and *Philadelphia,* and Appellants have given us no reason why that case is not dispositive. Nevertheless, we will briefly address each argument in turn.

---

**1.** Judge Greenspan went on to serve on our Supreme Court, and will subsequently be referred to as Justice Greenspan.

Appellants argue that they have standing because their right to bear arms is impinged upon by the ordinance, even if they are never punished for violating it. However, they cite no authority for the proposition that the right to bear arms precludes a legal responsibility to report stolen firearms. Because we are unconvinced that the ordinance burdens the right, Appellants do not gain standing based on this argument.

Appellants also argue that the ordinance requires gun owners to inventory their firearms to determine if they have been lost or stolen, therefore creating a burden on the Individual Appellants' current behavior. However, this interpretation is contrary to the plain language of the ordinance. In fact, the ordinance only requires reporting within twenty-four hours of the *discovery* of the loss, not the loss itself, creating no affirmative duty to inventory firearms. *See* Pittsburgh City Code § 624.01. Therefore, the ordinance creates no burden on Appellants' current behavior, and this argument fails.

Finally, Appellants argue that the ordinance violates a statute (namely, the UFA) and therefore creates hardship *per se.* However, the doctrine of hardship *per se* is confined to preliminary injunctions for parties who already have standing, and appears to never have been applied to the issue of standing itself. *See Pub. Util. Comm'n. v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947); *Stilp v. Com.*, 910 A.2d 775 (Pa.Cmwlth.2006); *Council 13 v. Casey*, 141 Pa.Cmwlth. 199, 595 A.2d 670 (1991). Because Appellants lack standing, they cannot avail themselves of the doctrine of hardship *per se.*

For all the foregoing reasons, we affirm.

---

1. A municipal ordinance is criminal, rather than civil, in nature if the ordinance "provides for imprisonment upon conviction or failure to pay a fine or penalty." *Town of McCandless v. Bellisario*, 551 Pa. 83, 86, 709

### ORDER

AND NOW, this 25th day of June, 2010, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

### DISSENTING OPINION BY Judge BROBSON.

I respectfully dissent. This case presents one of those rare instances where, in the interest of justice, this Court should revisit a prior judicial decision. *See Buckwalter v. Borough of Phoenixville*, 603 Pa. 534, 985 A.2d 728, 731 (2009).

In *National Rifle Association v. City of Philadelphia*, 977 A.2d 78 (Pa.Cmwlth. 2009) (en banc) *(Philadelphia)*, this Court, adopting the trial court's standing analysis, held that the National Rifle Association and individual plaintiffs lacked standing to challenge a theft reporting ordinance similar to the one at issue in this matter. Though the trial court's analysis of the standing question in *Philadelphia* is well written and thorough, I believe it is unnecessarily restrictive and imposes an unreasonable and, in effect, insurmountable obstacle to pre-enforcement review of criminal ordinances.[1]

The following excerpt from the majority opinion supports this conclusion:

> Because Appellants do not allege that the gun was lost or stolen while the ordinance was in force, the facts as pled do not bring them any closer to establishing sufficient harm under the ordinance than the plaintiffs in *Philadelphia.* The Individual Appellants in this case, like the plaintiffs in *Philadelphia,*

---

A.2d 379, 381 (1998). Because it provides for imprisonment of up to 90 days for subsequent violations, the Pittsburgh ordinance at issue in this case is a criminal ordinance.

have never violated the ordinance, do not allege that they would disobey the ordinance if one of their guns is lost or stolen, and do not allege that a gun had been lost or stolen since the ordinance has been enacted.

(Majority Op. at 1259.) In essence, the majority posits that the only person who may lodge a pre-enforcement challenge to a criminal ordinance is a person who, *in a verified pleading filed with a court of law,* either (a) admits that he or she has already violated the ordinance in question or (b) commits to violating the law. I disagree that this is or should be the state of the law in this Commonwealth when it comes to challenging the facial validity of legislation at any level of government.

This Court's adoption by reference of the trial court's standing analysis in *Philadelphia* and its majority opinion in this case leave law-abiding citizens who fall within the class of those regulated by the allegedly unlawful ordinance with a Hobson's Choice—either comply with a law you believe is unlawful or subject yourself to possible criminal prosecution. We must not presume that the citizens of the Commonwealth will blithely choose to violate a law and risk criminal sanctions for the sole purpose of proving the law's invalidity any more than we should presume that a local government would enact a law, regulation, or ordinance that it has no intent to enforce. Accordingly, our ruling in *Philadelphia* and the majority opinion in this case create the avoidable risk that facially invalid criminal ordinances could go unchallenged if the burden of noncompliance and risk of prosecution is so great that willful noncompliance for the sole purpose of challenging the law is not an option.

In the absence of our prior *en banc* decision in *Philadelphia*, I would reverse the trial court and find that Appellants have the requisite standing to pursue a pre-enforcement challenge of the Pittsburgh theft ordinance. Appellant National Rifle Association (NRA) alleges, *inter alia*, that it is a membership organization that supports the rights of its members to keep and bear arms and that its members include residents of the City of Pittsburgh. (R.R. 4, 7.) Individual Appellants allege that they are residents of the City of Pittsburgh and own firearms. (R.R. 4–5.)

The ordinance in question provides, in pertinent part: "[N]o person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within twenty-four (24) hours after the discovery of the loss or theft." Pittsburgh City Code § 624.01. First time violations are punishable by a fine of up to $500, and subsequent violations are punishable by a fine of up to $1,000 and/or imprisonment of up to 90 days. The ordinance is self-executing and imposes a new reporting requirement on a defined class of residents of the City of Pittsburgh—firearms owners. Accordingly, as firearms owners in the City of Pittsburgh and an association representing the interests of the same, Appellants' interest in this case is "substantial" because it "surpasses the common interest of all citizens in procuring obedience to the law." *South Whitehall Twp. Police Serv. v. South Whitehall Twp.*, 521 Pa. 82, 86, 555 A.2d 793, 795 (1989).

In terms of whether Appellants' interest is sufficiently direct and immediate to confer standing, *Arsenal Coal Co. v. Dep't of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984), is instructive. In that case, the plaintiff filed a complaint, seeking pre-enforcement review of a challenge to a regulation of a state administrative agency. In addressing the question of whether the plaintiff had an adequate remedy at law, precluding the court's exercise of equitable jurisdiction, the Pennsylvania Supreme Court found that "the *asserted impact* of the regulations in the instant

case is *sufficiently direct and immediate* to render the issue appropriate for judicial review." *Arsenal Coal,* 505 Pa. at 210, 477 A.2d at 1339–40 (emphasis added). The court reasoned:

> [T]he lengthy process by which the validity of the regulations will be addressed on a basis of application to the litigant would result in ongoing uncertainty in the day to day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval.
>
> Appellants may refuse to comply and test the regulations by appealing, for example, a denial of permit to operate, or a denial of bond release, or by defending actions imposing sanctions for noncompliance. This proposed avenue of review is beset with penalties and impediments to the operation of the anthracite industry rendering it inadequate as a satisfactory alternative to the equitable action initiated under the original jurisdiction of the Commonwealth Court.
>
> The alternative to challenging the regulation through noncompliance is to submit to the regulations. We cannot say that the burden of such a course is other than substantial, accepting, as we must on a motion to dismiss on the pleadings, the allegations of the complaint as true. Appellants have alleged that the regulations require the expenditure of substantial sums to comply which, while not immediately calculable, will substantially impair the cash flow of all Appellants. *Whether or not this allegation is true,* it is clear that if Appellants elect to comply and await judicial determination of validity in subsequent piecemeal litigation, the process would be costly and inefficient.

*Id.* at 210, 477 A.2d at 1340 (emphasis added).

The trial court in *Philadelphia* addressed *Arsenal Coal* and distinguished it on the facts. Mere factual distinctions, however, between this case and *Arsenal Coal* do not, *a fortiori,* preclude application of the Pennsylvania Supreme Court's reasoning to the facts here. Indeed, a compelling distinction between *Arsenal Coal* and this case that the trial court in *Philadelphia* did not address is that the pre-enforcement challenge here is to a *criminal* ordinance that unquestionably regulates (and allegedly interferes with) the exercise of a right expressly protected under the Second Amendment to the United States Constitution and Article 1, Section 21 of the Pennsylvania Constitution. (R.R. 5.) Nonetheless, the Pennsylvania Supreme Court in *Arsenal Coal* found that mere *allegations* of financial harm occasioned by the passage of the challenged administrative agency regulations were sufficient to show that the impact of the challenged regulations was sufficiently direct and immediate.

I would hold that an allegation that a challenged *criminal* ordinance impacts adversely an individual's free exercise of a constitutional right is *at least* as compelling as an allegation that an administrative agency's regulation impacts adversely an entity's business/financial interest, which was the case in *Arsenal Coal.* Because the trial court did not make a factual record on Appellants' allegation that the challenged ordinance interferes with the free exercise of a protected right, I cannot conclude, as the majority concludes, that the ordinance does not burden the right.[2] Moreover, as in *Arsenal Coal,* the only apparent alternative for Appellants in this case, in light of

---

**2.** Respondent the City of Pittsburgh raised the issue of standing by way of a demurrer under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure. (R.R. 118.) Our standard of review of such objections requires us to accept as true all well-pleaded allegations of

the majority's opinion and *Philadelphia*, would be willful noncompliance with a criminal ordinance. This is no option at all and further shows that Appellants, who are within the defined class of persons regulated by the ordinance, have a direct and immediate interest sufficient to bring this pre-enforcement challenge.

For all of the foregoing reasons, I would reverse the trial court.

fact set forth in the complaint. *Waslow v. Pennsylvania Dep't of Educ.*, 984 A.2d 575, 579 n. 9 (Pa.Cmwlth.2009). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible, and any doubt should be resolved in favor of overruling the demurrer." *Commonwealth ex rel. Corbett v. East Brunswick Twp.*, 980 A.2d 720, 726 (Pa.

Cmwlth.2009). Whether the City of Pittsburgh theft reporting ordinance interferes with a constitutionally protected right is at least a mixed question of law and fact. Under the applicable standard of review, and based on the averments of the Complaint, I do not believe this Court can say with certainty that Appellants lack standing.