# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against Crime,    :
Kim Stolfer and Joseph Abramson,   :
             Appellants      :
                    :  No.  1693 C.D. 2015
          v.          :
                    :  Argued:  May 12, 2016
Lower Merion Township      :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE McCULLOUGH[1]                FILED:  December 16, 2016


       Firearm Owners Against Crime (FOAC), Kim Stolfer, and Joseph Abramson (collectively "Firearm Owners") appeal the August 26, 2015 order of the Court of Common Pleas of Montgomery County (trial court) denying their motion for a preliminary injunction.


## Facts and Procedural History

       In 2011, Lower Merion Township (Township) passed an ordinance amending section 109-16 of its Code (Ordinance) to prohibit persons from "carry[ing] or discharg[ing] firearms of any kind in a park without a special permit, unless exempted."  Lower Merion Township, Pa., Code §109-16.  The Ordinance

---

[1] This opinion was reassigned to the Author on June 2, 2016.

imposes a maximum fine of $600.00 per violation and authorizes the police to remove violators from Township parks or recreation areas.[2]

In 2014, FOAC contacted the Township and alleged that the Ordinance violated section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA)[3] because it improperly restricted firearm possession in Township parks. Upon review, the Township determined that the Ordinance was consistent with the UFA because it only prohibited the unlawful possession of firearms in parks and, therefore, chose not to repeal or revise it. FOAC subsequently conducted a rally in a Township park where many of its members carried firearms; however, no citations were issued and no threats of prosecution were made.

On March 20, 2015, Firearm Owners filed a complaint against the Township seeking declaratory and injunctive relief and alleging that the Ordinance violated Article 1, Section 21 of the Pennsylvania Constitution[4] and was preempted by the UFA. On April 14, 2015, the Township filed preliminary objections to

---

[2] *See* Lower Merion Township, Pa., Code §109-21 (imposing civil penalties).

[3] Act of October 18, 1974, P.L. 768, *as amended*, 18 Pa.C.S. §6120(a). Notably, in *Leach v. Commonwealth*, 141 A.3d 426 (Pa. 2016), the Pennsylvania Supreme Court invalidated Act No. 192 of 2014 (Act 192) because it violated the Pennsylvania Constitution's single-subject rule. Act 192 amended four sections of the Crimes Code, including the UFA. Specifically, Act 192 added sections 6120(a.2) and (a.3), which allowed anticipatory challenges to local laws and authorized the court to award reasonable expenses for a successful challenge to the same. However, notwithstanding *Leach*, section 6120(a) of the UFA remains valid because it was codified prior to the enactment of Act 192 and does not suffer from the same constitutional infirmity.

[4] Article 1, Section 21 of the Constitution of the Commonwealth of Pennsylvania provides that "[t]he right of the citizens to bear arms in defence of themselves and the State shall not be questioned." PA. CONST. art. 1, §21.

2

Firearm Owners' complaint, as well as a motion to stay proceedings, arguing, *inter alia*, that Firearm Owners lacked standing to challenge the Ordinance.[5]

On May 8, 2015, Firearm Owners filed a motion for preliminary injunction. In their motion, Firearm Owners alleged that: the Ordinance's violation of the Pennsylvania Constitution and the UFA constituted *per se* immediate and irreparable harm; greater injury would result from refusing the injunction than granting it because Firearm Owners would face prosecution and be deprived of their constitutional and statutory rights; an injunction would restore the parties to their status as it existed prior to the alleged wrongful conduct; and Firearm Owners are likely to prevail on the merits because the Township's enactment of the Ordinance is preempted and, therefore, prohibited.

The Township filed an answer to Firearm Owners' motion, asserting that there is no evidence indicating that the Township ever enforced the Ordinance against any party and, therefore, any harm alleged was speculative and insufficient to warrant issuance of a preliminary injunction. Additionally, the Township argued that: more harm would result from granting the injunction than refusing it because prohibiting the unlawful possession of firearms is essential to the safety of the Township's residents; the issuance of injunction will not restore the parties to their status as it existed prior to the alleged wrongful conduct; and Firearm Owners are not likely to prevail on the merits of their claim because, *inter alia*, the Ordinance does not violate the UFA as it only regulates the unlawful possession of firearms in Township parks.

---

[5] By order dated May 13, 2015, the Township's motion for stay was denied and, by order dated July 7, 2015, the Township's preliminary objections were overruled in part and sustained in part. (Reproduced Record (R.R.) at 1a-2a.)

By order dated August 26, 2015, the trial court denied Firearm Owners' motion for preliminary injunction. The trial court reasoned that Firearm Owners' claims are uncertain and, therefore, "the matter is not ripe for a preliminary injunction." (Trial court op. at 4.) Additionally, the trial court determined that Firearm Owners failed to meet their burden to prove immediate and irreparable injury because the alleged injury was speculative. The trial court also noted that the Township proffered weighty arguments against Firearm Owners' claim that they are likely to succeed on the merits, citing this Court's decision in *Minich v. County of Jefferson*, 869 A.2d 1141 (Pa. Cmwlth.) (en banc), *appeal denied*, 889 A.2d 90 (Pa. 2005).

On appeal to this Court,[6] Firearm Owners reiterate the arguments they made before the trial court. Specifically, Firearm Owners assert that the trial court erred in denying their motion for preliminary injunction because the Ordinance is preempted by the Pennsylvania Constitution and the UFA, all of the necessary prerequisites are met, and, therefore, issuance of a preliminary injunction is proper.

## Discussion

### Preliminary Injunction

The essential prerequisites of a preliminary injunction are: 1) the injunction is necessary to prevent immediate and irreparable harm not compensable in money damages; 2) greater injury will result from refusing the

---

[6] Our scope of review of the grant or denial of a preliminary injunction is a narrow one; we must examine the record to determine whether there were any apparently reasonable grounds for the lower court's decision. *Dillon v. City of Erie*, 83 A.3d 467, 472, n.7 (Pa. Cmwlth. 2014) (en banc). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court]." *Id*.

4

injunction than from granting it; 3) the injunction restores the parties to *status quo ante*; and 4) the activity sought to be restrained is actionable and the plaintiff's right to relief is clear. *Dillon v. City of Erie*, 83 A.3d 467, 470 n.1 (Pa. Cmwlth. 2014) (en banc). "Because one of the elements which the moving party must establish is that 'his right to relief is clear,' it is of course necessary that the moving party be able to show that he has a reasonable likelihood of success on the merits." *Lewis v. City of Harrisburg*, 631 A.2d 807, 810 (Pa. Cmwlth. 1993).

### Firearm Owners' Right to Relief

Section 6120(a) of the UFA provides, in relevant part, that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms . . . ." 18 Pa.C.S. §6120(a).

The Pennsylvania Supreme Court's decision in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), is instructive because it delineates the relationship between state and local firearm regulation. In *Ortiz*, Philadelphia and Pittsburgh passed ordinances regulating certain types of assault weapons within their respective geographic regions. After the ordinances were passed, the Pennsylvania General Assembly amended the UFA to add section 6120(a)'s current language. Thereafter, Philadelphia city councilmembers and others filed a petition for declaratory and injunctive relief, seeking to enjoin the Commonwealth's preemption of Philadelphia's regulation of assault weapons as well as a declaration that the amendment is unconstitutional and violates the city's home rule charter and the First Class City Home Rule Act.[7] The Commonwealth

---

[7] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§13101-13157.

5

filed preliminary objections, which this Court granted for failure to state a cause of action, and the petitioners appealed.

On appeal, the Pennsylvania Supreme Court stated that:

> The sum of the case is that the Constitution of Pennsylvania requires that home rule municipalities may not perform any power denied by the General Assembly; the General Assembly has denied all municipalities the power to regulate the ownership, possession, transfer or possession of firearms; and the municipalities seek to regulate that which the General Assembly has said they may not regulate. *The inescapable conclusion, unless there is more, is that the municipalities' attempt to ban the possession of certain types of firearms is constitutionally infirm.*

*Id*. at 155 (emphasis added).

Nevertheless, the petitioners argued, *inter alia*, that a home rule municipality's power may be restricted only when the General Assembly has enacted a statute on a matter of statewide concern. The Supreme Court noted that:

> Although we agree with appellants that the General Assembly may negate ordinances enacted by home rule municipalities only when the General Assembly's conflicting statute concerns substantive matters of statewide concern, this does not help the municipal appellants, *for the matters at issue in this case are substantive matters of statewide concern*.

*Id*. at 156 (emphasis added). The Supreme Court then cited Article 1, Section 21 of the Pennsylvania Constitution and stated that:

> Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. The constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of

6

Pennsylvania, not merely in Philadelphia and Pittsburgh, *and the General Assembly, not city councils, is the proper forum for the imposition of such regulation*.

*Id*. (emphasis added). Accordingly, the Pennsylvania Supreme Court affirmed this Court's order sustaining the Commonwealth's preliminary objections for failure to state a cause of action.

The Township would have us distinguish the instant appeal from *Ortiz* based on its assertion that the Ordinance purports to regulate only the unlawful possession of firearms and that, consequently, Firearm Owners' right to relief is not clear. It relies upon our decision in *Minich* for this proposition.

The Township's reliance on *Minich* is misplaced. In *Minich*, the county enacted an ordinance prohibiting individuals from possessing weapons in any county building and mandating that a point-of-entry search be performed on every person entering the county court house. Subsequently, the plaintiffs attempted to enter the county court house while possessing concealed handguns for which they had valid permits; however, the plaintiffs were denied entry when they refused to submit to a point-of-entry search. Thereafter, the plaintiffs filed a complaint seeking declaratory and injunctive relief, asserting that section 6120(a) of the UFA preempted the regulation of firearm possession in a court facility. The trial court agreed and declared the ordinance null and void. We reversed the trial court, however, because section 913(f) of the Crimes Code[8] already prohibited the unlawful possession of firearms in the county court house's first floor hallway because it constitutes an "adjoining corridor" of a "court facility." Thus, we held that section 6120(a) of the UFA does not preempt the county's ordinance because it does not regulate the "lawful" possession of firearms; rather, it only regulates

---

[8] Act of June 13, 1995, P.L. 1024, *as amended*, 18 Pa.C.S. §913(f).

7

possession that the General Assembly has already deemed unlawful and, therefore, does not conflict with the UFA.

Unlike the ordinance in *Minich*, the subject Ordinance, by its terms does not solely regulate the possession of firearms that the General Assembly has already decided to be unlawful. The Ordinance is a broad proscription against carrying or discharging any kind of firearm in a park absent a "special permit" unless exempted. Unlike *Minich*, the Township does not point to any corresponding provision in the Crimes Code that contains such a blanket ban of firearm possession in a park. Further, the Township's argument that the UFA does not preempt a municipality's regulation of unlawful firearm possession was expressly rejected by this Court in *National Rifle Association v. City of Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009).

In *City of Philadelphia*, the city of Philadelphia enacted five ordinances in an effort to regulate the ownership and transfer of firearms in the city.[9] The National Rifle Association (NRA), various NRA members, a sporting foundation, a state association of firearms retailers, and two local firearm retailers filed an action seeking declaratory and injunctive relief, asserting that the

---

[9] The ordinances may be summarized as follows: "Imminent Danger Ordinance," authorizes the temporary removal of firearms from persons found by the court, upon affidavit of two police officers or a district attorney, to pose a risk of imminent harm to themselves or others; "Protection From Abuse Ordinance," prohibits persons subject to an active protection from abuse order from acquiring or possessing firearms when such order provides for confiscation of the firearms; "Lost or Stolen Gun Ordinance," requires gun owners to report their lost or stolen firearms to law enforcement officials within twenty-four hours after discovery of the loss or theft; "Assault Weapons Ordinance," prohibits the possession, sale and transfer of certain offensive weapons, including assault weapons, as well as certain contraband accessories or ammunition; and, "Straw Purchaser Ordinance," prohibits any person when purchasing a handgun from acting as a straw purchaser and prohibits the purchase of more than one handgun within any thirty-day period, except for any person who is not a straw purchaser. *City of Philadelphia*, 977 A.2d at 79-80.

8

ordinances were unconstitutional and preempted by section 6120(a) of the UFA. The trial court issued a preliminary injunction and, after a hearing, permanently enjoined the city from enforcing the "Assault Weapons Ordinance" and the "Straw Purchaser Ordinance" because it determined they were preempted by state law; however, the trial court concluded that the plaintiffs failed to establish standing to challenge the remaining three ordinances.

On appeal to this Court, the city argued that section 6120(a) of the UFA does not preempt all regulation of firearms; instead, the city averred that it is authorized to regulate in more detail that which the state has already made unlawful so long as it does not intrude "'within the zone that has been expressly preempted by the Commonwealth,' *i.e.*, the regulation of lawful activity." *Id.* at 80. According to the city, it was not precluded from enacting the ordinances because section 6120's plain language indicates that the General Assembly intended only to preclude local regulation of "lawful" activity, not unlawful activity. Conversely, the plaintiffs argued that the city is preempted from enacting any gun control ordinance pursuant to statewide preemption under section 6120(a) of the UFA. We acknowledged *Ortiz* and reasoned that:

> [T]he fact that the Court in *Ortiz* did not discuss the statutory language relied upon by the City [i.e., "lawful"] does not provide a legitimate basis for us to ignore its holding. Unfortunately, with respect to the matter before us, while we may agree with the City that preemption of 18 Pa.C.S. § 6120(a) appears to be limited to the *lawful* use of firearms by its very terms, we believe, however, that the crystal clear holding of our Supreme Court in *Ortiz,* that, "the General Assembly has [through enactment of § 6120(a)] denied all municipalities the power to regulate the ownership, possession, transfer, or [transportation] of firearms," precludes our acceptance of the City's argument and the trial court's thoughtful analysis on this point.

9

*Id*. at 82-83 (emphasis in original) (internal footnote omitted). Accordingly, we affirmed the trial court's order permanently enjoining the city from enforcing the two ordinances that the plaintiffs had standing to challenge.

According to the Township and the trial court, this Court's decision in *Minich* "supports the notion that the Ordinance is not clearly at odds with the UFA" because the Ordinance regulates only the unlawful possession of firearms and, consequently, Firearm Owners' right to relief is not clear. (Trial court op. at 4 n.3). Additionally, the Township asserts that the language in *City of Philadelphia* that contradicts *Minich*'s holding is dicta and the city's argument therein was distinguishable because, although the city purported to regulate unlawful conduct, it was actually restricting lawful conduct. Conversely, Firearm Owners argue that the Pennsylvania Supreme Court's decision in *Ortiz* and this Court's decision in *City of Philadelphia* dictate that the Township is preempted from regulating firearm possession in any manner.

Here, contrary to the Township's averment, it is irrelevant whether the city in *City of Philadelphia* believed the conduct it was regulating was unlawful. Rather, the critical upshot is our recognition that *Ortiz*'s "crystal clear holding" prohibits this Court from endorsing the argument that a cognizable distinction exists between regulating lawful activity and unlawful activity. 977 A.2d at 82. Moreover, we disagree with the Township's characterization of the language in *City of Philadelphia*; it was not dicta because it was essential to our holding.

Therefore, the trial court's conclusion that Firearm Owners' right to relief was not clear based on *Minich* was erroneous: the activity Firearm Owners seek to restrain is actionable and, pursuant to *Ortiz* and *City of Philadelphia*, their right to relief is clear.

10

**The Township's Authority to Regulate on its Property**

The Township also argues that it is authorized to regulate the possession of firearms in its parks based on its rights as a property owner and cites this Court's decision in *Wolfe v. Township of Salisbury*, 880 A.2d 62 (Pa. Cmwlth. 2005), for support.

In *Wolfe*, the township enacted various ordinances regulating hunting in its parks. Subsequently, a number of the township's residents filed a petition to permanently enjoin the township from implementing its ordinances, asserting that the Game and Wildlife Code (Game Law), 34 Pa.C.S. §§101-2965, preempts all local regulation of hunting, citing *Duff v. Northampton Township*, 532 A.2d 500 (Pa. Cmwlth. 1987), which invalidated a township ordinance that created its own "safety zones" which differed from the "safety zones" established in the Game Law. The trial court denied the petition and the residents appealed to this Court. On appeal, the residents argued that the trial court erred in failing to apply the *Duff* test for preemption. We reasoned that *Wolfe* was distinguishable from *Duff* because, in *Wolfe*, the township acted as a property owner regulating only municipal-owned property rather than acting as a township regulating throughout the municipality. Specifically, we stated:

> Residents, while relying heavily on this Court's reasoning in *Duff*, ignore an important distinction between that case and the one before us. In *Duff*, a township enacted an ordinance regulating hunting throughout the township inconsistently with the Game Law, *based on its police powers*—that is, as a governmental entity. Here, however, the Township enacted the Ordinance, in compliance with the Game Law, *based on its rights as a property owner* of the two parks.

*Wolfe*, 880 A.2d at 68 (emphasis added).

11

Moreover, we found persuasive section 2508 of the Game Law, which contained statutory exceptions that authorized hunting in parks under certain circumstances notwithstanding the general rule prohibiting hunting in parks. *See* 34 Pa.C.S. §2508(c)(2). Thus, we affirmed the trial court's determination that "as long as property owners impose restrictions that are at least as restrictive as those contained in the Game Law and set by the Commission, they are within their rights to 'regulate' hunting on their own property." *Wolfe*, 880 A.2d at 69.

We find the present matter distinguishable from *Wolfe* because, here, pursuant to *Ortiz* and *City of Philadelphia*, the Ordinance is not consistent with the UFA. Rather, the UFA explicitly prohibits a township from regulating "in any manner" and contains no express exemptions authorizing a township to enact ordinances permitting firearm regulation on its property, i.e., parks, comparable to that contained in the Game Law. Additionally, it is not clear whether the Ordinance was promulgated pursuant to the Township's police powers or based on its rights as a property owner; however, the fact that the Ordinance authorizes the police to remove violators from Township parks suggests the Township's police power is the basis for the Ordinance rather than its property-owner rights. Therefore, the Township's argument that Firearm Owners' right to relief is not clear based on its authority to regulate its parks as a property owner pursuant to *Wolfe* is unpersuasive.

**Immediate and Irreparable Harm**

The Township also argues that Firearm Owners cannot demonstrate immediate and irreparable harm because the Ordinance has never been enforced against them, nor were they ever threatened with prosecution under the Ordinance.

12

This Court has stated that the violation of an express statutory provision constitutes *per se* irreparable harm and a preliminary injunction may issue where the other necessary elements are met. *Council 13, American Federation of State, County and Municipal Employees, AFL-CIO v. Casey*, 595 A.2d 670, 674 (Pa. Cmwlth. 1991).

Here, as explicated above, regardless of the persuasiveness of the Township's argument, our binding case law mandates that the Ordinance is preempted by section 6120(a) of the UFA and, therefore, the Township's enactment of the same violates the UFA. Thus, issuance of a preliminary injunction is necessary to prevent immediate and irreparable harm, i.e., the continued statutory violation.[10]

---

[10] Although the parties have not raised the issue of standing and the trial court did not consider the same, the Dissent maintains that "because there have been no threats by the Township of bringing an action for a civil penalty against anyone, FOAC has no standing to maintain this action." Dissent slip op. at 6-7. However, the question of standing is not an issue of subject matter jurisdiction and, therefore, may not be raised *sua sponte*. *Hertzberg v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46 n.6 (Pa. 1998). Nevertheless, even if standing was at issue, FOAC has established a sufficient injury to obtain judicial review pursuant to this Court's decision in *National Rifle Association v. City of Pittsburgh*, 999 A.2d 1256 (Pa. Cmwlth. 2010), where this Court considered a factual situation similar to the present matter, but distinguishable on the most important issue of standing.

In *City of Pittsburgh*, a firearm advocacy group and four individual gun owners (collectively, the appellants) challenged a city ordinance requiring gun owners to report missing or stolen guns. In their complaint seeking declaratory relief, three individual gun owners alleged that they lived in areas where residential burglaries were common and the fourth alleged that a gun belonging to him had been stolen; however, he failed to specify whether the theft occurred before or after the ordinance was enacted. The city filed preliminary objections, asserting that the appellants lacked standing to challenge the ordinance. The trial court sustained the city's preliminary objections and dismissed the complaint.

On appeal to this Court, we affirmed the trial court, relying on our decision *City of Philadelphia* and reasoning that:

**(Footnote continued on next page…)**

13

(continued…)

> The individual Appellants in this case, like the plaintiffs in *Philadelphia*, *have never violated the ordinance*, do not allege that they would disobey the ordinance if one of their guns is lost or stolen, and do not allege that a gun has been lost or stolen since the ordinance has been enacted. One of the individual Appellants in this case would not be fined under the ordinance unless he had a gun stolen or lost, failed to report it, and was prosecuted for that failure. Because, as in *Philadelphia*, the possibility of harm is remote and speculative, Appellants lack standing.

*Id*. at 1259 (emphasis added).

Standing was denied because, as this Court noted, the appellants had never violated the ordinance or alleged that they would violate the same. Indeed, Judge Brobson, in a dissenting opinion, noted that the majority's holding restricts who may file a pre-enforcement challenge to the ordinance to a person who "(a) *admits that he or she has already violated the ordinance in question* or (b) commits to violating the law." *Id*. at 1261 (Brobson, J. dissenting) (emphasis added). By limiting the class of persons who may file a pre-enforcement challenge in that way, Judge Brobson stated that:

> We must not presume that the citizens of the Commonwealth will blithely choose to violate a law and risk criminal sanctions for the sole purpose of proving the law's invalidity any more than we should presume that a local government would enact a law, regulation, or ordinance that it has no intent to enforce.

*Id*. (Brobson, J. dissenting).

*City of Pittsburgh* is informative because it contemplates conferring standing on litigants who have violated an ordinance even if no enforcement action has occurred. In the present matter, it is undisputed that FOAC and many of its members conducted a rally in a Township park while carrying firearms *in violation of the Ordinance*, although no citations were issued and no threats of prosecution were made. Indeed, pursuant to *City of Pittsburgh*, the fact that FOAC violated the Ordinance is sufficient to confer standing to obtain judicial review. As Judge Brobson explained in his dissent to *City of Pittsburgh*, we cannot presume that a local government would enact an ordinance it has no intention of enforcing. Thus, although the Township did not enforce the Ordinance when FOAC and its members conducted a rally in its park, we must not presume that it will act similarly if another rally is performed or an individual violates the Ordinance. Here, unlike *City of Pittsburgh*, the injury alleged is not speculative; the operative act has already occurred.

**(Footnote continued on next page…)**

## Balance of Injuries

The Township next argues that it would suffer substantial harm if the Ordinance was enjoined because it is essential to the safety of Township residents and to the public's use and enjoyment of Township parks. However, contrary to the Township's assertion, we have stated that "[w]hen the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public." *Dillon*, 83 A.3d at 474.

Thus, we conclude that greater injury would result from refusing an injunction than granting it because refusing an injunction would sanction the Township's continued statutory violations of the UFA and, therefore, be injurious to Firearm Owners and the public.

## Status Quo

"The *status quo ante* to be preserved by a preliminary injunction is the last actual, peaceable, lawful, noncontested status which preceded the pending controversy." *Dillon*, 83 A.3d at 472 n.7.

---

**(continued…)**

Additionally, it is disconcerting that, by deliberately failing to enforce the Ordinance, the Township could essentially determine who may challenge the Ordinance and when that challenge will occur. The Township should not be the entity determining when and who may invoke judicial review by arbitrarily enforcing the Ordinance; rather, that determination is within the purview of the courts and should be determined by the relevant facts and constitutional considerations.

Accordingly, if this Court were authorized to consider standing *sua sponte*, it is apparent that FOAC has established a sufficient injury to confer standing pursuant to *City of Pittsburgh* because it has violated the Ordinance notwithstanding that the Township failed to enforce the same.

15

Here, the last nonconstested status existed prior to the Township's enactment of the Ordinance. Therefore, an injunction enjoining the Ordinance would restore the parties to their last uncontested status and preserve the status quo.

**Conclusion**

Contrary to the trial court's determination, this Court's decision in *Minich* does not support the notion that the Ordinance is consistent with the UFA nor raise doubts regarding Firearm Owners' right to relief. Rather, our decision in *City of Philadelphia* expressly rejected the argument the Township proffered in the present matter, i.e., that the regulation of unlawful firearm possession is consistent with the UFA. Therefore, the trial court's determination that Firearm Owners' right to relief is not clear was erroneous. Moreover, Firearm Owners have met the additional, essential prerequisites for issuance of a preliminary injunction.

Accordingly, because there are no apparently reasonable grounds for the trial court's decision, the trial court's order is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Covey did not participate in this decision.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against Crime, :
Kim Stolfer and Joseph Abramson, :
            Appellants :
             : No. 1693 C.D. 2015
          v. :
             :
Lower Merion Township :

## ***ORDER***

AND NOW, this 16th day of December, 2016, the August 26, 2015 order of the Court of Common Pleas of Montgomery County is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against Crime, : 
Kim Stolfer and Joseph Abramson, : 
           Appellants : 
            : 
          v. : No. 1693 C.D. 2015
            : Argued: May 12, 2016
Lower Merion Township : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: December 16, 2016


      I respectfully dissent because the trial court had an "apparently reasonable basis" to refuse to issue a preliminary injunction[1] to declare invalid a 2011 township ordinance dealing with guns in its parks, and no action for a civil penalty has been brought under our restrictive scope of review which forecloses inquiry into the merits of the controversy. Even on the underlying merits, the majority gets it wrong as our case law is clear: a local government can control, like every other

---

[1] "The essential prerequisites of a preliminary injunction are as follows: (1) The injunction is necessary to prevent immediate and irreparable harm not compensable in money damages. (2) Greater injury will result from refusing the injunction than from granting it. (3) The injunction restores the parties to *status quo ante*. (4) The activity sought to be restrained is actionable, and the plaintiff's right to relief is clear." *The Woods at Wayne Homeowners Association v. Gambone Brothers Construction Co., Inc.*, 893 A.2d 196, 204 (Pa. Cmwlth.), *appeal denied*, 903 A.2d 1235 (Pa. 2006) (citation omitted). The *status quo ante* to be preserved by a preliminary injunction is the last actual, peaceable, lawful, non-contested status which preceded the pending controversy. *Id.* at 204 n.10.

property owner, what takes place on its property. The net result of the majority not following our case law is something that the General Assembly never intended − that a local government must permit guns in and on property that it owns, including its recreation centers, ballfields, daycare centers and libraries, not to mention county offices in the courthouse, in its police department, at its jail, in its council chambers, in its mayor's office and so on.

## I.

In 2011, Lower Merion Township (Township) amended Code Section 109-16 (Ordinance) of its Code to prohibit persons from "carry[ing] or discharg[ing] firearms of any kind in a park without a special permit, unless exempted." Lower Merion Township, Pa., Code § 109-16 (2015). The Ordinance permits police to remove violators from Township parks and imposes a maximum fine of $600.00 per violation.[2]

---

[2] *See* Lower Merion Township, Pa., Code § 109-21 (imposing civil penalties). The provision does not provide for any "in default of payment" jail time; the only penalty imposed is civil in nature. In *Town of McCandless v. Bellisario*, 709 A.2d 379 (Pa. 1998), our Supreme Court addressed what level of due process protection was due when municipal ordinances did not provide for imprisonment:

> While the enforcement of municipal ordinances *that provide for imprisonment upon conviction or failure to pay a fine or penalty* must follow the Rules of Criminal Procedure, the same is not true for municipal ordinances *that do not provide for imprisonment upon conviction or failure to pay a fine or penalty*, which, by definition, are not Penal Laws, and are therefore not included in the definition of "criminal proceedings." Pa.R.Crim.P. 3. The higher degree of protection provided by the Rules of Criminal Procedure does not apply to municipal ordinance enforcement actions where imprisonment is not a remedy for a conviction or failure to pay a fine.

**(Footnote continued on next page…)**

DRP - 2

Firearm Owners Against Crime (FOAC), Kim Stolfer and Joseph Abramson (collectively, "FOAC") contacted the Township in 2014 alleging that the Ordinance unlawfully restricts firearms in Township parks in violation of Section 6120(a) of the Pennsylvania Uniform Firearms Act (UFA), 18 Pa.C.S. § 6120(a), which provides:

> (a) General rule.—No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

The Township initially contemplated revising the Ordinance, but because it concluded that the Ordinance only prohibited the unlawful possession and discharge of firearms in parks, it determined that the Ordinance did not violate the UFA and decided not to repeal or revise it.

FOAC then held a rally in a Township park at which many of its members carried firearms. No citations were issued, no threats of prosecution were made and there is no evidence that the Township has ever enforced the Ordinance against anyone, including FOAC members.

---

**(continued…)**

*Id.* at 381 (emphases in original).

**II.**

FOAC then filed a Complaint seeking declaratory and injunctive relief against the Township asserting the Ordinance is unconstitutional[3] and preempted by Section 6120(a) of the UFA. In the Complaint, FOAC averred that the Township publicly announced its intention to enforce the Ordinance. FOAC then sought a preliminary injunction to prevent the enforcement of the Ordinance. FOAC admitted, however, that it was unaware of any person prosecuted under the Ordinance and did not contend that any individual was specifically threatened with prosecution or penalty under the Ordinance.

At the preliminary injunction hearing, the Township emphasized that the Ordinance has never been used to prosecute, cite or threaten any person, including FOAC members. The Township reasserted that it enacted the Ordinance to merely echo the state law's prohibition against persons carrying concealed firearms without a permit, and that the Ordinance treats persons who lawfully carry non-concealed firearms in its park as being "exempt." Further, the Township contended that FOAC does not have a clear right to relief because the Ordinance is not a regulation of firearms, but is instead an action carried out by the Township under its inherent power to operate the property that it owns – in this case, its parks – and that such conduct is not preempted by the UFA.

---

[3] Article I, Section 21 of the Constitution of Pennsylvania provides that the "right of the citizens to bear arms in defense of themselves and the State shall not be questioned." Pa. Const. art. I, § 21.

Because the trial court determined that FOAC neither presented evidence demonstrating actual proof of harm outside of those founded on speculation and hypothesis nor established the existence of an immediate, irreparable harm justifying extraordinary relief, the trial court concluded that FOAC failed to meet the standards necessary to grant a preliminary injunction and denied its motion. Also, the trial court found that the Township proffered weighty arguments against FOAC's claim for relief and, noting this Court's decision in *Minich v. County of Jefferson*, 869 A.2d 1141 (Pa. Cmwlth.), *appeal denied*, 889 A.2d 90 (Pa. 2005), it determined that FOAC failed to set forth a clear right to relief and that this matter should be fully adjudicated at a regular trial.

The majority reverses the trial court's refusal to grant a preliminary injunction because it finds that the Ordinance in question violates the prohibition against a local government enacting general laws that regulate firearms in or on its own property. Not only is that conclusion wrong, while paying lip service to it, the majority also ignores that our scope of review for preliminary injunctions is "a narrow one — we 'do not inquire into the merits of the controversy, but only examine the record to determine if there were any **apparently reasonable grounds** for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [Court].'" *Dillon v. City of Erie*, 83 A.3d 467, 472 n.7 (Pa. Cmwlth. 2014) (quoting *The Woods at Wayne Homeowners Association*, 893 A.2d at 204) (emphasis added). Instead, I would affirm the trial court for the following reasons.

### III.

### A.

Because FOAC did not suffer any immediate, irreparable harm or establish likelihood that they would suffer any personal harm, the trial court had reasonable grounds to deny FOAC's motion for preliminary injunction. There was nothing in the preliminary injunction record establishing that FOAC members have been prosecuted or that there is even a threat of prosecution, including at an FOAC rally held at a Township park at which many of its members carried firearms. Although FOAC allegedly fears the Ordinance's enforcement, the trial court reasonably concluded that such a generalized, speculative fear was insufficient for the purpose of enjoining enforcement of the Ordinance. As this Court has explained, "[w]hile one does not have to wait for an actual prosecution to have standing, '[i]njunctive relief is not available to eliminate a possible remote future injury or invasion of rights.'" *Dillon*, 83 A.3d at 475 (quoting *Jamal v. Department of Corrections*, 549 A.2d 1369, 1371 (Pa. Cmwlth. 1988), *appeal denied*, 554 A.2d 512 (Pa. 1989)). Given FOAC's rally in a Township park at which many of its members carried firearms where no citations were issued and no threats of prosecution were made, and given that there is no evidence the Township ever enforced the Ordinance against anyone, including FOAC members, any harm is less than a remote possible injury or invasion of rights.

### B.

### 1.

There are several reasons why FOAC does not have a clear right to relief. First, from the discussion above, because there have been no threats by the

Township of bringing an action for a civil penalty against anyone, FOAC has not suffered irreparable harm which, if we were considering preliminary objections rather than preliminary injunctions, is the same as saying that it has no standing to maintain this action.[4]  In *National Rifle Association v. City of Pittsburgh,* 999 A.2d 1256 (Pa. Cmwlth. 2010), a general ordinance was challenged requiring the owner of a lost or stolen firearm to report to law enforcement within 24 hours of the discovery of the loss or theft.  The plaintiffs lived in Pittsburgh, owned guns and had valid permits to carry concealed weapons.  Three of the plaintiffs alleged that they lived in areas where residential burglaries were common, and the fourth alleged that a gun belonging to him had been stolen.  The trial court found that the plaintiffs lacked standing to challenge the ordinance because they had not shown they were aggrieved.  On appeal, we adopted the reasoning of our opinion in *National Rifle Association v. City of Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009), which itself adopted the portion of the trial court's opinion holding that the possibility that one of the plaintiffs might lose a gun in the future, fail to report it and then be punished was too remote and speculative to give them standing to challenge the legality of the theft reporting ordinance.  Moreover, we stated that the ordinance's purported violation of the UFA could not create a sufficient hardship that would *ipso facto* create automatic standing to challenge that ordinance.  *See id.* at 1260; *see also Dillon*, 83 A.3d at 475 (holding plaintiff did not have standing to challenge a local ordinance where there was no indication that its penalties would ever be applicable to him).

---

[4] Because FOAC primarily asserted automatic standing through 18 Pa. C.S. §6120(a.1), the Township also filed a motion to stay proceedings until this court decided whether the statute violated the Pennsylvania Constitution.  The Township's motion was denied.  This court and our Supreme Court have since held that the provision violated the state constitution's single subject and original purpose requirements.  *Leach v. Commonwealth*, 118 A.3d 1291 (Pa. Cmwlth. 2015), *affirmed*, 141 A.3d 426 (Pa. 2016).

In this case, that FOAC would be subject to civil penalty is similarly remote and speculative. No one was ever cited or threatened with citation under the Ordinance and, given the Township's assertion that it enacted the Ordinance to merely echo the state law's prohibition against persons carrying concealed firearms without a permit and that the Ordinance treats persons who lawfully carry non-concealed firearms in its park as being "exempt," FOAC lacks standing to maintain the action. That alone serves as an "apparently reasonable basis" for sustaining the trial court's refusal to grant a preliminary injunction.

**2.**

Second, FOAC does not have a clear right to relief under Section 6120(a) of the UFA because the Township's Ordinance does not regulate firearms. Instead, it carries out the Township's inherent power to control what takes place on its property – in this case, its parks – and such conduct is not preempted by the UFA. In *Minich*, we held that county officials could refuse to allow guns in county offices in a courthouse because the UFA did not preempt local ordinances that only regulate the unlawful use and possession of firearms on government property, reasoning:

> Section 6120(a) of the [UFA] provides that "[n]o county . . . may in any manner regulate the **lawful** . . . possession . . . of firearms . . . when carried . . . for purposes **not prohibited by the laws of this Commonwealth**." 18 Pa. C.S. § 6120(a) (emphasis added). In other words, the County may not enact an ordinance which regulates firearm possession **if** the ordinance would make the otherwise lawful possession of a firearm unlawful. Thus, if the County's ordinance pertains only to the **unlawful** possession of firearms, i.e., possession "prohibited by the laws of this Commonwealth,"

then section 6120(a) of the Crimes Code does not preempt the County's ordinance.

869 A.2d at 1143 (footnote omitted) (emphases in original).[5]

In this case, as the Township contends and the trial court accepted, that is all this Ordinance does − it addresses how to deal with the unlawful possession of firearms in parks under state law and nothing else. Because *Minich* held that type of regulation was not preempted by Section 6120(a) of the UFA to prohibit guns in county offices, the trial court had an "apparently reasonable basis" to find that FOAC did not have a clear right to relief.

In *Wolfe v. Township of Salisbury*, 880 A.2d 62 (Pa. Cmwlth. 2005), we reiterated that a local government could forbid firearms on its property because it was not regulating firearms as a municipality but instead carrying out its inherent right as a property owner to control what conduct occurs on its own property.[6] We explained:

---

[5] The above passage in *Minich* also provides a footnote:

> *See Schneck v. City of Philadelphia,* 383 A.2d 227 (Pa. Cmwlth. 1978) (stating that it is a well-established principle of law that where a state statute preempts local governments from imposing regulations on a subject, any ordinance **contrary to** state law is unenforceable); *see also Ortiz v. Commonwealth,* 681 A.2d 152 (Pa. 1996) (stating that the General Assembly may negate ordinances enacted by home rule municipalities only when the **conflicting** state statute concerns substantive matters of statewide concern).

869 A.2d at 1143 n.6 (emphases in original).

[6] A municipality, in acquiring and maintaining parks and playgrounds, exercises a proprietary, rather than a governmental, function; municipalities are liable for the improper **(Footnote continued on next page…)**

Preemption is applicable where a township has acted to regulate hunting as a township; that is, throughout the municipality. This Ordinance, however, is applicable only to the properties owned by the Township itself. The Township has exercised its authority, as any other property owner may, to "regulate" hunting on its property, consistent with the [Game and Wildlife Code (Game Law), 34 Pa. C.S. §§ 101-2965]. There is no authority to suggest that municipalities that own property are treated differently than individuals under the Game Law with respect to property ownership rights.

*Wolfe*, 880 A.2d at 69 (footnote omitted).

As can be seen from *Wolfe*, the Township was not attempting to regulate conduct throughout the municipality but only what takes place on property that it owns or controls. What *Minich* and *Wolfe* teach us is that Section 6120(a) of the UFA does not preempt a local government from acting like any other property owner and control what occurs on its property by allowing or not allowing conduct that it feels is not in its best interest or that of its guests.[7]

---

**(continued…)**

management and use of their property. *See DeSimone v. City of Philadelphia*, 110 A.2d 431 (Pa. 1955); *Stevens v. City of Pittsburgh*, 198 A. 655, 657-58 (Pa. 1938).

[7] In *Dillon*, 83 A.3d at 473 n.9, we stated:

Not raised by the City is Section 3710 of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 38710, which provides, in pertinent part, that the City "shall at all times be invested with the power and authority to adopt suitable rules and regulations concerning the use and occupation of [its] parks and playgrounds by the public generally. . . ." It could be argued that the City may be empowered under that grant of power from the State to regulate the

**(Footnote continued on next page…)**

The majority does not dispute that *Minich* and *Wolfe* say what they say, but instead argues that they are inconsistent with our Supreme Court's decision in *Ortiz v. Commonwealth*, 681 A.2d 152 (Pa. 1996), and our decision in *City of Philadelphia*, 977 A.2d at 82. Let us examine each of those cases.

*Ortiz* dealt with an action brought by a city councilman in Philadelphia seeking a declaration that Philadelphia, under its home rule powers, had the power to enact general ordinances to regulate assault weapons even though Section 6120(a) of the UFA had prohibited it from doing so. Our Supreme Court held that even though Philadelphia was a home rule municipality, it was still foreclosed from enacting such an ordinance because the UFA was an act of statewide application.

Neither *Minich* nor *Wolfe*, however, are inconsistent with *Ortiz*. *Minich* distinguished *Ortiz* as "stating that the General Assembly may negate ordinances enacted by home rule municipalities only when the **conflicting** state statute concerns substantive matters of statewide concern." *Minich*, 869 A.2d at 1143 n.3 (emphasis in original). Our Supreme Court also apparently did not believe that our holding in

---

**(continued…)**

possession of firearms in its parks pursuant to its proprietary power to control conduct that takes place on its property rather than through an ordinance of general application enacted pursuant to its general police powers. Similarly, Section 11.215 of the regulations of the Commonwealth's Department of Conservation and Natural Resources, 17 Pa. Code § 11.215, generally prohibits "[p]ossessing an uncased device, or uncasing a device, including a firearm, . . . that is capable of discharging or propelling a projectile . . ." in state parks, subject to a number of enumerated exceptions.

*Minich* was inconsistent with *Ortiz* since it denied Mr. Minich's request for allowance of appeal from our decision. 889 A.2d 90 (Pa. 2005).

In *City of Philadelphia*, after we agreed with the trial court that the plaintiff lacked standing to challenge certain ordinances, we went on to find that the plaintiff had standing to challenge the legality of ordinances banning straw purchases of handguns and purchases of assault weapons. Echoing *Minich*, we stated that while we "may agree with the City that preemption of 18 Pa.C.S. § 6120(a) appears to be limited to the lawful use of firearms by its very terms," *id.* at 82, we went on to hold that the city could not enact those ordinances because, in *Ortiz,* our Supreme Court stated that "the General Assembly has [through enactment of § 6120(a)] denied all municipalities the power to regulate the ownership, possession, transfer or [transportation] of firearms." *Id.*

I do not disagree with that holding. In fact, I joined in that decision that a local government cannot enact ordinances that regulate guns, notwithstanding that it frustrated the "City's latest attempt to regulate certain activity with respect to firearms in its ongoing efforts to address the unfortunate and tragic proliferation of gun crimes in the City." *City of Philadelphia*, 977 A.2d at 80. However, neither *Minich* nor *Wolfe* dealt with the general regulation of firearms or ownership of firearms, only with the power of local governments to control what takes place on their property, which we found in those cases was not preempted by the UFA.[8]

---

[8] *See Calguns Foundation, Inc. v. County of San Mateo*, 218 Cal. App. 4th 661, 676-77 (Cal. Ct. App. 2013) (Park gun ban not preempted, in part, because it is "very narrow" "land use regulation" and "pertains only to specific areas within the county, and areas patently subject to the governance of the County Board of Supervisors, i.e., its parks and recreation areas."); *Hunters,* **(Footnote continued on next page…)**

The majority takes an absolutist view and ignores the distinction between the general laws at issue in *Ortiz* and *City of Philadelphia* and the control of what takes place on local government property that was at issue in *Minich* and *Wolfe*. It also seems to ignore the principle that when interpreting our case law, just as when interpreting a statute, we are to interpret them in a manner that makes them consistent, not inconsistent. Because *Minich* and *Wolfe* remain good law, the trial court had an apparent reasonable basis to deny the request for a preliminary injunction.

---

**(continued…)**

*Anglers & Trappers of Vermont, Inc. v. Winooski Valley Park District*, 913 A.2d 391, 398-400 (Vt. 2006) ("It is consistent for the Legislature to prohibit direct regulation of hunting . . . , but also entitle municipalities to manage their own lands in the interests of recreation and conservation . . . . [T]he District was within its rights to place conditions on the use of its lands, which the Legislature has explicitly authorized the District to manage in the interest of conservation, among other interests.") (internal citations omitted); *Nordyke v. King*, 44 P.3d 133, 138 (Cal. 2002) (can ban guns on county property); *Great Western Shows, Inc. v. County of Los Angeles*, 44 P.3d 120, 127-28 (Cal. 2002) (same); *Peter Garrett Gunsmith, Inc. v. City of Dayton*, 98 S.W.3d 517, 520 (Ky. App. 2002) ("Without the power to control the location of gun shops and firearm dealers, a city could find itself at the mercy of the firearms businesses that could begin operating wherever they choose, for example, in the heart of a community surrounded by single-family homes."); *McMann v. City of Tucson,* 47 P.3d 672, 677 (Ariz. App. 2002) ("[T]he legislature's primary concern, according to the only legislative history of which we are aware, was to ensure that conduct legal in one municipality is not illegal in another and that citizens have access to firearms for protection, not to prevent cities from determining how to use their commercial property."); *id.* at 678 (distinguishing *Schneck v. City of Philadelphia*, 383 A.2d 227 (Pa. Cmwlth. 1978) and another decision because the "cases involved ordinances regulating firearms throughout the respective local jurisdictions"); *Kaluszka v. Town of East Hartford*, 760 A.2d 1282, 1286 n.1 (Conn. Super. 1999) *aff'd*, 760 A.2d 1269 (Conn. App. 2000) ("Of course, the town, as owner, could restrict hunting on municipally owned property."); *City of Tucson v. Rineer*, 971 P.2d 207, 211 (Ariz. Ct. App. 1998) (park gun ban "govern[s] conduct only within the city's parks and prohibits firearms solely within those boundaries, a legitimate and narrow local concern").

Accordingly, because the trial court had apparently reasonable grounds to conclude that FOAC did not have a clear right to relief, I would affirm the trial court's denial of FOAC's motion for a preliminary injunction.

_____
DAN PELLEGRINI, Senior Judge