IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James P. Wescott,                          :
                Appellant          :
                                          :          No. 781 C.D. 2017
                v.                :
                                          :          Argued:  October 19, 2017
Delaware County Intermediate Unit          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. WESLEY OLER, JR., Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED:  November 28, 2017


       James P. Wescott appeals from the June 5, 2017 order of the Court of Common Pleas of Delaware County (trial court) denying his petition for preliminary injunction.


**Facts and Procedural History**

       Wescott is an electrical contractor and a resident of Delaware County and the applicable school district.  On May 23, 2017, Wescott filed a complaint in equity and petition for injunctive relief with the trial court.  Wescott sought to enjoin the Delaware County Intermediate Unit (IU) from awarding public construction work at the IU's Aston Campus based on the IU's failure to conduct an appropriate bidding process, i.e., failing to solicit separate bids for plumbing, HVAC, and electrical work.

The work included the construction of two new additions that would be connected to an existing structure, the removal of a boiler system in that structure, and a new centralized HVAC system that would serve all three connected structures. The approximate cost of the project was $38,000,000.00. Wescott alleged that separate bids were required under section 1 of what is commonly referred to as the Separations Act,[1] which provides, in pertinent part, as follows:

> Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.

71 P.S. §1618.

Wescott noted a similar provision at section 751(a.2) of the Public School Code (Code) of 1949,[2] which provides, in pertinent part, as follows:

> All construction, reconstruction, repairs, maintenance or work of any nature, including the introduction of plumbing, heating and ventilating, or lighting systems, upon any school building or upon any school property, or upon any building or portion of a building leased under the provisions of section 703.1, made by any school district where the entire cost, value or amount of such construction, reconstruction, repairs, maintenance or work, including labor and material, shall exceed a base amount of eighteen thousand five hundred

---

[1] Act of May 1, 1913, P.L. 155, *as amended*, 71 P.S. §1618.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-751(a.2).

2

dollars ($18,500), subject to adjustment under section 120, shall be done under separate contracts to be entered into by such school district with the lowest responsible bidder, upon proper terms, after due public notice has been given asking for competitive bids.

24 P.S. §7-751(a.2).

Wescott asserted that the IU was attempting to avoid the requirements of the Separations Act and section 751(a.2) of the Code by awarding a single public construction contract for new public works by use of the process allowed under the Guaranteed Energy Savings Act (GESA), 62 Pa.C.S. §§3751-3758. The IU filed an answer to Wescott's complaint and petition, asserting that its actions were justified under GESA.

**Trial Court Order and Subsequent Opinion**

By order dated June 5, 2017, the trial court denied Wescott's petition for injunctive relief, concluding that Wescott did not have a clear right to relief. Because Wescott did not request a hearing with respect to his petition and the trial court considered the only issue to be resolved to be a purely legal question which did not require a hearing, the trial court based its order on the pleadings filed by the parties. In its order, the trial court explained that section 3752 of GESA, 62 Pa.C.S. §3752, which it found controlled the matter, defines the term "[e]nergy conservation measure" (hereafter, ECM) as:

A program, facility alteration or technology upgrade designed to reduce energy, water, wastewater or other consumption or operating costs. The term may include, without limitation:

. . .

3

> (4) [h]eating, ventilating or air conditioning system modifications, *extension of systems to **new** or renovated areas or system* replacements.

(Trial court order at 2) (emphasis in original). Additionally, the trial court noted that this definition also includes "[w]ater and sewer conservation measures, including, without limitation, plumbing fixtures and infrastructure." *Id.* The trial court described the project as including a centralized HVAC system for all three structures "put in space created by first demolishing a boiler system in an existing structure and replaced with a centralized system centered in the existing structure which will then be extended" to the new structures via "a labyrinth of pipes, coils, electrical wiring and all the other attendant equipment and electrical supplies and hook-ups necessary for the unified system." *Id.* at 2-3. The trial court concluded that such a project fit squarely within the provisions of GESA. Wescott did not request reconsideration of this order, but instead filed a notice of appeal with the trial court.

In a subsequent opinion in support of its order, the trial court, relying on the Statutory Construction Act of 1972, 1 Pa.C.S. §§1501-1991, concluded that GESA was the controlling statute and acted as an exception to the requirements of the Separations Act. In this regard, the trial court noted that GESA was enacted after the Separations Act and described GESA's provisions as more specific than the general provisions of the Separations Act. The trial court reiterated that the current project qualifies as an ECM under subsection (4) of its definition as set forth in section 3752 of GESA. Thus, the trial court held that "the activity which [Wescott] sought to restrain was not actionable and his right to relief was not clear thereby leading to the conclusion that he was not likely to prevail on the merits," a necessary element for preliminary injunctive relief. (Trial court op. at 5-6.)

4

## Discussion

Wescott thereafter filed a notice of appeal to this Court.[3] On appeal,[4] Wescott argues that the trial court erred in denying his request for a preliminary injunction. More specifically, Wescott argues that the trial court erred in: failing to require the IU to publicly bid and award the HVAC, electrical, and plumbing contracts in accordance with the Separations Act; holding that the Separations Act was superseded by GESA; and holding that the requirements for implementation of GESA were met.[5]

## Preliminary Injunction

In order to obtain a preliminary injunction, a petitioner must establish: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely

---

[3] Shortly after filing his notice of appeal, Wescott filed an application for injunctive relief pending our review under Pa.R.A.P. 1732. However, by single-Judge memorandum opinion and order dated August 1, 2017, this author denied said application.

[4] We note that on appeal from the grant or denial of a preliminary injunction, a reviewing court does not inquire into the merits of the controversy, but only examines the record to determine if there were any apparent reasonable grounds for the action of the court below. *Roberts v. Board of Directors of the School District of Scranton*, 341 A.2d 475, 478 (Pa. 1975). Only if it is apparent that no grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the court interfere with the decision of the common pleas court sitting in equity. *Id.*

[5] Contrary to Wescott's argument, the trial court never held that the Separations Act was superseded by GESA. Rather, the trial court noted that the Separations Act was applicable to the IU and that GESA acted merely as an exception to that Act.

5

to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the public interest will not be harmed if the injunction is granted. *Berwick Township v. O'Brien*, 148 A.3d 872, 890 (Pa. Cmwlth. 2016), *appeal denied*, ___ A.3d ___ (Pa., No. 923 MAL 2016, filed May 17, 2017). To establish a likelihood of prevailing on the merits, a petitioner must show that the activity which he seeks to restrain is actionable and that his right to relief is clear. *Firearm Owners Against Crime v. Lower Merion Township*, 151 A.3d 1172, 1175 (Pa. Cmwlth. 2016).

### Public Bidding of HVAC, Electrical, and Plumbing Contracts

Wescott first argues that the trial court erred in failing to require the IU to separately and publicly bid the HVAC, electrical, and plumbing contracts in accordance with the Separations Act.

The parties agree that the provisions of the Separations Act, and similar provisions later incorporated into the Code, generally apply to the IU. *See* Trial court op. at 2. These provisions clearly require separate specifications/bids for plumbing, heating, ventilating, and electrical work in relation to a school building or school property and mandate awards of contracts for such services to the lowest responsible bidder. However, a question remains as to whether GESA acts as an exception to these bidding requirements, as the trial court found. Section 3753 of GESA addresses contracting procedures under GESA, and provides, in pertinent part, as follows:

> **(a)** *General rule.* — Notwithstanding any other contrary or inconsistent provision of law, a governmental unit may enter into a guaranteed energy savings contract with a qualified provider in accordance with the provisions of this subchapter or in accordance with another statutorily authorized procurement process.

6

**(b)** *Guaranteed energy savings contract.* — If in accordance with applicable law the award of a contract by a governmental unit requires action at a public meeting, a governmental unit may award a guaranteed energy savings contract at a public meeting if it has provided public notice in the manner prescribed under 65 Pa.C.S. Ch. 7 (relating to open meetings), the notice including the names of the parties to the contract and the purpose of the contract. For governmental units that are not required to take actions on contracts at public meetings, the governmental unit may award a guaranteed energy savings contract in accordance with the procedures adopted by the governmental unit and the requirements of all applicable laws.

**(c)** *Competitive sealed proposals.* — For the purpose of entering into a guaranteed energy savings contract, all governmental units are authorized to utilize the competitive sealed proposal method of procurement. The governmental unit shall evaluate any proposal that meets the requirements of the governmental unit and is timely submitted by a qualified provider. The request for proposals shall be announced through a public notice from the governmental unit which will administer the program. The request for proposals shall provide all interested parties with sufficient information necessary to submit a timely and responsive proposal.

**(d)** *Selection and notice.* — The governmental unit shall select the qualified provider that best meets the needs of the governmental unit in accordance with criteria established by the governmental unit. . . After reviewing the proposals . . . a governmental unit may enter into a guaranteed energy savings contract with a qualified provider if it finds that the amount it would spend on the energy conservation measures recommended in the proposal would not exceed the amount of energy, water or wastewater cost savings, operational cost savings or revenue increases resulting from the energy conservation measures within a period not to exceed 20 years from the date of final installation. . . .

7

62 Pa.C.S. §3753(a)-(d).[6]

Generally, if two statutes are in dispute, we turn to the Pennsylvania rules of statutory construction to resolve the dispute. In such cases, section 1933 of the Statutory Construction Act of 1972 states that:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. §1933; *see also In re Downingtown*, 161 A.3d 844, 871 (Pa. 2017) (when two statutes are irreconcilable, the statute which is more specific prevails).

The trial court in this case concluded that the Separations Act and GESA were in conflict, applied section 1933 of the Statutory Construction Act of 1972, and held that the later enacted and more specific GESA provisions trump the general provisions of the Separations Act. Because the project qualified as an ECM under section 3752 of GESA, the trial court concluded that Wescott's claim was not actionable and his right to relief was not clear, and, therefore, Wescott was not likely

---

[6] While these provisions of GESA are found in Title 62 of Purdon's Consolidated Statutes, generally known as the Commonwealth Procurement Code, Wescott notes that another statute of the same name is found in Title 73 of Purdon's, relating to Trade and Commerce. *See* Act of May 10, 1996, P.L. 153, 73 P.S. §§1646.1-1646.8. The provisions of both statutes are nearly identical, but there is some variation in the definition sections of each statute. While Wescott argued before the trial court that the latter provisions were applicable to the IU in the present case, he concedes in his brief that the IU would fit within the definition of a "government unit" under section 3752 of GESA, 62 Pa.C.S. §3752. Indeed, the trial court found the Commonwealth Procurement Code provisions of GESA to be applicable to the IU herein.

to succeed on the merits. As a result, the trial court concluded that Wescott could not meet all of the elements necessary for preliminary injunctive relief.

However, contrary to the trial court, we are not persuaded that the Separations Act and GESA are in conflict. Instead, we believe that a compelling argument can be made that these statutes can function together such that effect could be given to both, thereby obviating the need for any statutory construction analysis. The Separations Act generally requires separate bidding and award of contracts to the lowest responsible bidder for any construction or alteration of a public building that exceeds $4,000.00. GESA's application is very narrow and limited to specific situations involving energy, water, or wastewater projects which would result in a cost savings that would effectively pay for the projects themselves. The fact that a project may include an element of energy, water, or wastewater savings does not make the entire project subject to GESA. Indeed, in this case, the IU could have bid out the construction of the additions separately in accordance with the Separations Act and limited the GESA project to demolition of the existing boiler system and replacement with a centralized HVAC system.

Nevertheless, while we disagree with the trial court's conclusions in this regard, we are constrained to affirm the trial court's denial of the preliminary injunction on other grounds, i.e., Wescott failed to establish that greater injury will occur from refusing to grant the injunction and that the public interest will not be harmed if an injunction were to be granted. Our Supreme Court has stressed that "For a preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others," *County of Allegheny v. Commonwealth*, 544 A.2d 1305, 1307 (Pa. 1988), and that the "burden is on the party who requested preliminary injunctive relief," *Warehime v.*

*Warehime*, 860 A.2d 41, 47 (Pa. 2004). Here, Wescott failed to meet at least two of the required elements.

More specifically, the project here involves the upfront expenditure of a significant amount of public funds, with an estimated cost of $38,000,000. The grant of an injunction will result in significant delays in the completion of the project, which, in turn, will undoubtedly result in increased costs to the IU, including, *inter alia*, costs for new specifications for bids, mobilization costs, and material costs. Moreover, any delay in the completion of the project would require the IU to sustain additional and substantial facility costs to house and teach its students. Indeed, during previous argument with respect to Wescott's application for injunctive relief pending our review, the IU noted that it currently leases outside facilities, that said leases are set to expire as of July 1, 2018, the project's expected completion date, and that it would cost approximately $2 million to extend these leases for an additional year. Wescott did not dispute these costs.

Accordingly, the trial court's order is affirmed, on the other grounds set forth above.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Based upon our determination above, we need not reach Wescott's remaining argument that the project did not meet the requirements for implementation under GESA.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James P. Wescott,                          :
                    Appellant             :
                                          :      No. 781 C.D. 2017
          v.                              :
                                          :
Delaware County Intermediate Unit         :

## ***ORDER***

AND NOW, this 28th day of November, 2017, the order of the Court of Common Pleas of Delaware County, dated June 5, 2017, is hereby affirmed, albeit on the other grounds discussed in the opinion.

_____
PATRICIA A. McCULLOUGH, Judge